## ALANSON B. SHEPARD *v.* WILLIAM P. BRIGGS.

### *Sale and Change of Possession.*

Where B. had leased a farm to T., and by an agreement between them, B. was to have a lien upon the products of the farm, for advances made and to be made, and among the products of said farm there was a quantity of cheese, which they carried to a depot, and left it with the agent, to be sent to a certain house in New York, with the understanding that B., who owned one-half by the terms of the lease, and had a lien upon the other half of the cheese by their agreement, should receive the money for all the cheese, when sold, and account to T. for his part of the same on general settlement. After they had so left the cheese, and on the same day, T. sold his interest in the same to S., without the knowledge of B., and with the intention, on the part of T. and S., to embarrass or defeat B., in enforcing his lien, and securing his account against T.; *it was held*, that this sale from T. to S. was void as to B.

And where T. and S. went to the property which had thus been put into the custody of the carrier by B. and T., and looking at the cheese T. said to S., I deliver this to you, but did not move the property, or notify the agent of the carrier, that any change had been made in the ownership or in the consignors, *it was held*, that this was no change of possession, and that it could have had no effect upon B., even if the contract had been *bona fide*.

THIS was an action on the case, brought by the plaintiff to recover of the defendant one-fourth part of the amount for which he sold a quantity of cheese, raised on the farm leased by defendant to one Jonathan and John G. Taggart. The case was referred to referees under a rule of court, who reported substantially the following facts:

That defendant leased a farm in Richmond, with the tools and stock thereon, for the term of two years from April first, 1849, to

one Jonathan and John G. Taggart. That the said Taggarts, acting under the lease, made a quantity of cheese, about 6662 pounds, of which, according to the terms of the lease, they owned one-half, and the defendant the other half; that in the latter part of October, 1850, Briggs, the defendant, and John G. Taggart, (Jonathan Taggart being dead,) took said cheese from the farm to the depot in Richmond, had it weighed, and marked B. & T. for Briggs and Taggart, and deposited at said depot, in the custody and care of the agent of the station, with directions to have it sent by railroad to Jewell, Harrison & Co., of New York.

That on the same day said John G. Taggart went to the plaintiff and they, without the knowledge of the defendant, entered into the following agreement: John G. Taggart drew a draft, payable at three months from date to the plaintiff or order, upon Jewell, Harrison & Co., for the amount of the cheese at five cents per pound; plaintiff endorsed the draft, and it was discounted at the Bank of Burlington. Taggart wrote a letter to Jewell, Harrison & Co., informing them that he had shipped so much cheese to them, and that he had drawn upon them for half the amount, and that they might pay Briggs, the defendant, for the other half.

That said Taggart, also, sent an invoice of the cheese made out in the name of Briggs and Taggart, but did not inform them that the cheese was sold to the plaintiff. Taggart and the plaintiff agreed that the money received from the Bank should be left in the hands of a third person, until the cheese reached its destination, but the money was finally paid over by the plaintiff to Taggart, upon the same day that the transaction took place.

That for further security, it was agreed between Taggart and plaintiff, that said Taggart should deliver the cheese to the plaintiff, and that it should be his property until it reached its destination, and they went to the depot, where the cheese was, and said Taggart showed it to plaintiff, but the cheese was not moved, or its possession in any way changed, nor did it appear that any notice was given to the station agent, or to the defendant of any transfer or delivery of the cheese to plaintiff; and the same afternoon the cheese was sent on the cars towards its destination; but Briggs, the defendant, hearing of the transaction, followed the cheese to Burlington, and there took possession of it, and sent it to another

firm in New York, by whom it was sold, and the proceeds sent to the defendant.

Taggart's draft on Jewell, Harrison & Co., was protested, and finally paid by plaintiff, Shepard. That it also appeared that there were large dealings and accounts between defendant and Taggart, that in the summer of 1849, an agreement was made between defendant and Jonathan Taggart, by which the property then on the farm, or thereafter to be made or raised on it, should belong to Briggs, the defendant, or be held by him, as security for debts assumed, and advances made by the defendant for the Taggarts, and for the balance that might be due defendant, on a future settlement; that John G. Taggart assented to this agreement, not expressly, but impliedly, by receiving the benefit of such agreement, after having knowledge of it from his father, Jonathan Taggart, and making no objection to it; and that defendant made advances, as by the agreement required; and that the cheese was made on the farm by the Taggarts after the said agreement was made. The counsel for the plaintiff contended that the transactions herein before detailed, constituted a sale of the cheese from Taggart to the plaintiff, or of his (Taggart's) interest in it; if not a sale, then it constituted a mortgage or pledge. But the referees decided, that the transaction was not a sale, nor a mortgage, nor a pledge *bona fide* made between them; but that it was a contrivance entered into between them, to enable Taggart, without the knowledge of defendant, to obtain the pay for half the proceeds of the dairy, and thus embarrass or defeat defendant in enforcing his *lien,* and securing his accounts against the Taggarts, &c., and that it was void as against defendant. The plaintiff also claimed that said John G. Taggart, before the death of his father, Jonathan, had bought said Jonathan's interest in the farm; but the referees found from the evidence, that said John G. owned only one-fourth of the cheese, subject to the agreement with defendant for the lien. It also appeared that the defendant was the administrator of Jonathan Taggart's estate.

The County Court, September Term, 1852,—POLAND J., presiding,—rendered judgment on the report of the referees for the defendant.

Exceptions by plaintiff.

*Geo. F. Edmunds* for plaintiff.

*Peck & Bailey* for defendant.

The opinion of the court was delivered by

REDFIELD, Ch. J.   We are here presented with another variation of the many changes, which seem to be present in the litigation between these parties, in regard to the letting of this farm. This plaintiff seeks to recover of the defendant one-fourth part of the amount for which he sold a quantity of cheese raised on the farm.   The contract provides, in terms, that " neither party shall sell the cheese, without the consent of the other."   Accordingly both parties had agreed to send this cheese to a house in New York, for sale, and had put it into the hands of the carrier for that purpose, under a consignment to this house.   And from the report, and the conduct of Taggart, we suppose the money for this sale was expected to come into Briggs' hands, as indemnity for what the Taggarts owed him, and to be accounted for on settlement, else we do not comprehend Taggart's entering into this arrangement with plaintiff, by which he now seeks to recover the money of defendant, and which arrangement the referees say " was not a sale, nor a mortgage, nor a pledge *bona fide* made between them; but a contrivance entered into between them, to enable Taggart, without Briggs' knowledge, to obtain pay for half the proceeds of the dairy, and thus to embarrass or defeat Briggs in enforcing his lien and securing his accounts against the Taggarts." We suppose from this, that John G. Taggart expected Briggs, on the sale in New York, to receive the money, and to account for it on settlement of this whole dealing, else why would Taggart's obtaining the money by this contrivance embarrass defendant in securing his accounts; John G. Taggart, then, had assented to Briggs' having a lien on the cheese, and to his retaining the money.   And the referees do not say that they found this assent of John upon the admissions of the father, and to suppose they did would be very absurd, since John seems to have acquiesced in defendant's lien, long after his father's death, up to the very time of depositing the cheese with the carrier on the consignment.   The referees say expressly that the admissions of Jonathan T. were admitted, because defendant claimed one-fourth of the property from Jona-

Shepard *v.* Briggs.

than Taggart, and that the admissions were merely, that Briggs had a lien, not any admission or declaration that John had assented to any such arrangement. This must have been found by other and independent evidence. So that we do not very well see how these admissions could have affected plaintiff's title to John's fourth of the money. And we suppose he does not expect to recover beyond that, although his arrangement with John G. Taggart, which the referees characterize as a contrivance to embarrass defendant, extended to one-half the cheese. Briggs owning one-half clearly in his own right, being administrator of Jonathan Taggart, which would give him, in any event, the control of one-fourth, and having a lien upon John G. Taggart's share, by his consent, it seems to us very obvious, that the plaintiff's contrivance to embarrass and defeat him in these rights, would have been altogether void, as to him, if it had been so far perfected by change of possession, as to be binding upon others claiming prior perfected liens upon the property.

II. But there was evidently no sufficient change of possession. Going to the property after it had been put into the custody of the carrier, and looking at it, and saying, I deliver this to you, without notifying the agent of the carrier, that any change had been made in the ownership or in the consignors, is no change of possession, and could have had no effect upon Briggs, if the contract had been altogether *bona fide.* But as it was, it could in no sense receive the favorable consideration of any tribunal. But we have endeavored to make the most of it for the plaintiff, and that is little. We think the plaintiff acquired no right, by this transaction to recover the money from defendant.

Judgment affirmed.