[Argued November 27, 1893; decided February 14, 1894.]

## CURRIE, RECEIVER, *v.* BOWMAN.

[S. C. 35 Pac. Rep. 848.]

1. CORPORATIONS — AUTHORITY OF PRESIDENT TO EXECUTE MORTGAGE — RATIFICATION BY DIRECTORS.— The general agent of a corporation is not authorized to mortgage its property as security for a loan, without specific authority from its board of directors, but acquiescence by the board in unauthorized chattel mortgages executed by the president is presumed, where ordinary care and attention to the business would have revealed the fact of their execution, and where, after the mortgagee had taken possession of the goods under the mortgages, the board, with full knowledge of the president's act, took no steps to disaffirm his authority or to repudiate the mortgages until the lapse of several months.

Statement of the case.

2. FRAUDULENT CONVEYANCES — PARTICIPATION OF GRANTEE IN THE FRAUD — CODE, § 3053.— Chattel mortgages given to secure *bona fide* debts are not void on the ground that they are given to hinder and delay creditors, although executed by the debtor for that purpose, where the grantee accepts them simply for the purpose of securing his claim, without any connivance with the debtor, although he may be aware that they will necessarily hinder and delay creditors, and that the debtor executed them with that object in view. It is only when the mortgage is both given and received with the intent to hinder and defraud creditors that it is void.

3. PREFERENCES BY CORPORATIONS.— So long as a corporation carries on its business with the expectation of its continuance it is not insolvent so as to avoid a preference given to a creditor. *Sabin* v. *Columbia Fuel Co.* 25 Or. 15, approved and followed.

4. CHATTEL MORTGAGES ON STOCKS OF GOODS.— Chattel mortgages on goods constituting stock are valid although permitting the mortgagor to remain in possession where they require him to keep a strict account and pay over the proceeds less the expenses of the business, to the mortgagee, and the conduct of the mortgagee indicates that he intends the terms of the mortgages shall be observed.*

5. EQUITABLE ASSIGNMENT — EVIDENCE.— An equitable assignment of promissory notes as collateral security, by a corporation to one of its creditors, is not established, where the notes were never indorsed and the subject of their delivery as collateral is conflicting, and the authority of the person who is claimed to have made such delivery is doubtful.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

This is a suit in equity, brought by W. A. Currie, as receiver of the Durand Organ & Piano Company, against B. H. Bowman, to have certain chattel mortgages, alleged to have been executed by the president and secretary of said company in his favor without lawful authority, adjudged to be fraudulent and void as against the company and its creditors; to compel the defendant to account for and pay over the proceeds of sales of the mortgaged

---

* NOTE.— The effect upon the validity of a mortgage of merchandise of a provision or agreement giving the mortgagor the possession with power of sale, is very exhaustively treated in a note analyzing the multitude of authorities on the subject with the case of *Ephraim* v. *Kelleher*, 4 Wash. 243, 18 L. R. A. 604.— REPORTER.

property to such receiver, and to surrender the residue of such property remaining in his hands unsold, together with certain promissory notes, made by divers persons and payable to the order of the company, which are alleged to be in his possession, and retained by him in fraud of the rights of such company and its creditors, together with contracts for musical instruments sold to divers persons, which are alleged to be fraudulently retained by him, or, in case any of such notes or contracts have been collected in whole or in part by the defendant, to compel him to account for, and pay over the money so collected to such receiver; and to surrender and deliver up three policies of insurance upon the life of Ezra Durand, made payable to such company, which were transferred and delivered to defendant as collateral security for money alleged to have been loaned by him to the said Durand as president of said company, etc.; and for a full and complete accounting of all matters and transactions as set forth in the complaint. The defendant, by his answer, bases his claim of right to the possession of the mortgaged goods, and to the proceeds arising from the sale thereof, as against the said company and its creditors, upon two sets of chattel mortgages, alleged to have been executed in his favor by the president and secretary of the company, with the consent and authority of its board of directors, as security for the company's indebtedness to him, and claims the right to possession of the promissory notes referred to in the complaint by reason of their delivery to him by the president of said company as additional security for such indebtedness. The defendant also claims that the said contracts were by the president turned over to him without indorsement for the consideration of twelve hundred and ten dollars, and that the life insurance policies and notes were transferred to him long prior to the transaction

complained of, as collateral security for the sum of ten thousand dollars loaned to said company.

The trial court, after hearing the evidence, held, in effect, that the company had acquiesced in the execution of said mortgages; that they were not void upon their face, or by reason of any extrinsic facts, as against the creditors of said company; that they constituted a lien upon the stock of goods, and that the defendant was entitled to hold the same, and to retain the moneys arising therefrom, until the indebtedness secured thereby was paid; that the delivery of the said notes to the defendant by the president, under the circumstances, although without indorsement, was sufficient to constitute an equitable assignment of them, and to entitle the defendant to retain the same, and all moneys collected thereon, until the said indebtedness was paid; that the defendant was entitled to retain and hold the contracts received by him from the president, and the moneys collected, or which he may collect, thereon until he realizes the sum of twelve hundred and ten dollars, the amount paid for said contracts, and, that after realizing such amount, he should transfer the remaining contracts to the plaintiff; and that the plaintiff was not entitled to any relief against the defendant.                    MODIFIED.

*Mr. Albert H. Tanner* ( *Messrs. John H.* and *Hiram E. Mitchell* on the brief), for Appellant.

*The Chattel Mortgages.*— The chattel mortgages referred to are void as having been made with the intent to hinder, delay, and defraud the creditors of the Durand Organ & Piano Company, under sections 3059 and 3063, volume 2, of Hill's Annotated Laws: *Lyons* v. *Leahy,* 15 Or. 8; *Kane* v. *Weigley,* 22 Penn. St. 179; *Brittain* v. *Crowther,* 54 Fed Rep. 295; Bump on Fraud. Con. 494.

The defendant is not a purchaser for value in respect to the preëxisting indebtedness for which the mortgages were taken, and consequently it is not necessary to fasten upon him notice of the fraudulent intent in order to avoid these instruments, to the extent, at least, of such preëxisting indebtedness: *Vest* v. *Packwood,* 34 Fed. Rep. 368; *Bank* v. *Bates,* 120 U. S. 556; *Carey* v. *White,* 52 N. Y. 138.

The chattel mortgages are void as against the corporation and its creditors for the reason that they were executed by the president and secretary without any authority from the board of directors of the corporation, and because the president or other managing officer of a corporation has no authority by virtue of his office to execute mortgages upon the personal property of the corporation, much less the entire available assets of such corporation: *Luce* v. *Isthmus R. R.* 6 Or. 125, 25 Am. Rep. 506; *Lynden Mill Co.* v. *Library Society,* 63 Vt. 581; Cook on Stock and Stockholders, 716, and note 4; *In re St. Helens Mill Co.* 3 Sawy. 88.

The facts found by the court are insufficient in law to show any such ratification or acquiesence in these mortgages as would bind or ought to bind the corporation *Lynden Mill Co.* v. *Library Society,* 63 Vt. 581; *Leggett* v. *Bank,* 1 N. J. Eq. 541; *Bank* v. *Drake,* 29 Kan. 311; *Yellow & Co.* v. *Stevenson,* 5 Nev. 224; *Edwards* v. *Carson Water Co.* 34 Pac. Rep. 381.

An insolvent corporation, whose business has practically ceased, cannot make a preference in favor of one creditor to the exclusion of other creditors, much less can this be done by the unauthorized act of the managing officer of such insolvent corporation without the knowledge, consent, or concurrence of the board of directors: 2 Morawetz on Corporations, § 803; Taylor on Private Corporations, §§ 34, 654, 655, 668, 759; Wait on Insolvent Corporations, §§ 162, 654; 2 Story's Eq. § 1252;

2 Pomeroy's Eq. § 1046; *Tank Line* v. *Varnish Co.* 45 Fed. Rep. 7; *White Mfg. Co.* v. *Pettes Imp. Co.* 30 *Id.* 864; *B. & O. Tel. Co.* v. *Interstate Tel. Co.* 54 Fed. Rep. 50; *Robins* v. *Embry*, 1 S. & M. Ch. 207; *Rouse* v. *Bank*, 46 Ohio St. 493, 15 Am. St. Rep. 644, 5 L. R. A. 378; *Thompson* v. *Huron Lumber Co.* 4 Wash. 600; *Bank* v. *Knowles*, 67 Wis. 373; *Haywood* v. *Lumber Co.* 64 *Id.* 639; *Kankakee Mill Co.* v. *Kampe*, 38 Mo. App. 229; *Marr* v. *Bank*, 4 Cold. 471; *Smith* v. *Putnam*, 61 N. H. 632.

In order that the clause in the mortgages authorizing the sale of goods by the mortgagor and to account to the mortgagee shall render the mortgage valid upon its face, it is necessary that the mortgage should provide that the proceeds of the goods sold should be paid to the mortgagee and applied upon the mortgage debt, while here the proviso is that the money shall be paid to the mortgagor and applied on the debt: *Joseph* v. *Levy*, 58 Miss. 834; *Brackett* v. *Harvey*, 91 N. Y. 215; Pierce on Mortgages of Merchandise, § 139.

The clause in one of each of the two mortgages dated respectively January ninth and twenty-fifth, eighteen hundred and ninety-two, authorizes the mortgagor to sell upon credit at his discretion, for an unlimited time, upon secured contracts to be turned over to the mortgagee and applied upon the mortgage debt when collected by the mortgagee. This clause we submit renders the mortgage fraudulent and void as to creditors upon its face, and is conclusive evidence of the intent to hinder, delay, and defraud creditors: *Bank* v. *Westbury*, 16 Hun, 458; *Brackett* v. *Harvey*, 91 N. Y. 215; *Gardner* v. *Bank*, 95 Ill. 298; *Bank* v. *Knowles*, 67 Wis. 373; *Thompson* v. *Huron Lumber Co.* 4 Wash. 600; *Blennerhassett* v. *Sherman*, 105 U. S. 100; *Dunham* v. *Rowell*, 17 N. Y. 9; *Jones* v. *Syer*, 52 Md. 211.

A chattel mortgage on a stock of goods, wares, and merchandise where the mortgagor is allowed to continue

XXV. Or.— 24.

the business, sell the goods and use the proceeds, is fraudulent and void as against creditors: *Orton* v. *Orton*, 7 Or. 478, 33 Am. Rep. 717; *Jacobs* v. *Ervin*, 9 Or. 52; *Bremer* v. *Fleckenstein*, 9 Or. 266; *Aiken* v. *Pascall*, 19 Or. 493; *Bank of Ogden* v. *Davidson*, 18 Or. 571.

Where the mortgagee allows the mortgagor to remain in the possession of the goods, continue to sell the same and use the proceeds, with his knowledge, it is equivalent to an agreement on the part of the mortgagee to that effect, to be implied from that fact, and renders the transaction void as to creditors: *Bremer* v. *Fleckenstein*, 9 Or. 373; *Putnam* v. *Osgood*, 52 N. H. 154; *Russel* v. *Wienne*, 37 N. Y. 591, 47 Am. Dec. 755; *Southard* v. *Benner*, 72 N. Y. 424; *Putnam* v. *Osgood*, 51 N. H. 252; *Hangen* v. *Hachemeister*, 114 N. Y. 566, 11 Am. St. Rep. 69, 5 L. R. A. 137; Pierce on Mortgages of Merchandise, § 152.

If the mortgagor is allowed to use any portion of the proceeds of the business it is fatal to the mortgage, even though there be an agreement to account to the mortgagee and pay over the proceeds to him; and this fact may be shown by parol evidence in the face of the mortgage: *Greenbaum* v. *Wheeler*, 90 Ill. 296; *Dunning* v. *Mead*, 90 Ill. 376; *Hangen* v. *Hachemeister*, 114 N. Y. 566.

A chattel mortgage without a clause authorizing the mortgagor to sell, but which the mortgagee permits to be done, is void as to creditors: *Barnet* v. *Fergus*, 51 Ill. 352, 49 Am. Dec. 547.

If the mortgages are fraudulent and void upon their face, the presumption of law against them is conclusive, and the actual intent of the parties immaterial: *Robinson* v. *Elliott*, 22 Wall. 513; *Russel* v. *Winnie*, 37 N. Y. 591–595, 47 Am. Dec. 755; *Steinart* v. *Duester*, 23 Wis. 136–138; *Blakeslee* v. *Rossman*, 43 Wis. 116–124.

The fact that the mortgagee obtains possession of the goods under the mortgage, void for the reasons above

suggested, does not give him any right to the property as against the receiver or the creditors whom he represents: *Blakeslee* v. *Rossman,* 43 Wis. 116; *Stein* v. *Munch,* 24 Minn. 390; *Robinson* v. *Elliott,* 22 Wallace, 513; Pierce on Mortgages of Merchandise, § 143; *Gallagher* v. *Rosenfield,* 47 Minn. 507; *Mandeville* v. *Avery,* 124 N. Y. 386, 21 Am. St. Rep. 678; *Ferguson* v. *Hillman,* 55 Wis. 181; Jones on Chattel Mortgages, § 351*a.*

*As to the Promissory Notes and Bank Accounts.*— The promissory notes belong to the corporation, and it is entitled to their possession. Defendant is not a *bona fide* purchaser for value and without notice so as to claim protection, and consequently he cannot defend against the true owner of the notes: *Lee's Administrator* v. *Mead,* 1 Metcalf (Ky.), 628, 71 Am. Dec. 494; *Roxborough* v. *Messick,* 6 Ohio St. 448, 67 Am. Dec. 346; *Stocker* v. *MacDonald,* 6 Hill, 93; *Gillett, Receiver,* v. *Phillips,* 13 N. Y. 114. The notes in question all being made payable to the order of the Durand Organ & Piano Company, the mere unauthorized delivery of the notes by E. Durand to the defendant, without any indorsement and without consideration, would not transfer the title to the notes, either in law or equity: 1 Daniel on Negotiable Instruments, § 664*a.*

The contracts belong to the corporation and the facts found confer no title or right of possession whatever upon the defendant: *Singer Sewing Machine Co.* v. *Graham,* 8 Or. 1.

*Messrs. William W. Thayer* and *Emmett B. Willians* (*Messrs. Richard Williams* and *Chas. H. Carey* on the brief), for Respondent.

Opinion by MR. CHIEF JUSTICE LORD.

As the plaintiff bases his objections to the findings of law by the court upon the ground that they are not sus-

tained by the evidence, we shall consider his objections
in their order.   His first objection is, that the evidence is
insufficient in law to show such a ratification or acqui-
escence in the execution of such mortgages by the presi-
dent and secretary as would bind the company.   The facts
show that prior to the second day of December, eighteen
hundred and ninety-one, E. Durand, as president of such
company, was authorized by resolution of its board of
directors "to indorse and transfer, on behalf of the com-
pany, any notes, contracts, leases, or other obligations
belonging to the company, for the purpose of borrowing
money, or selling the same to such persons, and upon
such terms, as he shall think best," to enable him to
obtain money when needed for use in the business of the
company.   That about the nineteenth day of December,
eighteen hundred and ninety-one, the president, finding
it necessary to execute a chattel mortgage upon the stock
of goods in the store of the company, to secure a loan
from Daly & Son of some nine thousand dollars, or there-
abouts, was informed, upon consultation with their attor-
ney, that he must have authority by resolution of the
board of directors of the company before he would be
authorized to execute such chattel mortgage; that upon
receiving such advice he procured the minute-book of
the company, and exhibited the same to such attorney
with the word "mortgage" and the word "property"
interlined in the resolution above stated, which words
appeared to be in the same handwriting as the original
resolution; and though the interlineation aroused some
suspicion in the mind of the attorney, he did not feel
justified in questioning its authenticity, and made no
further inquiry, whereupon a chattel mortgage was exe-
cuted by E. Durand, as president of the company, and
D. J. Durand, as secretary thereof, under the seal of the
corporation, and delivered to Daly & Son as security for

the sum specified, which mortgage was filed in the office of the county recorder.

It appears that prior to the ninth day of January, eighteen hundred and ninety-two, Daly & Son were pressing the company for payment of their mortgage, and that the president applied to the defendant for the loan of a sufficient sum to pay it; that the company was indebted to the defendant at the time in the sum of ten thousand dollars, and that he held a large number of notes and contracts payable to it as collateral security for the payment of such sum, and also certain policies of insurance upon the life of the president, which policies were made payable to the company, but the evidence shows that many of such notes and contracts were forged, and that many of the contracts had been paid before they were assigned, so that there is no way of ascertaining their probable value; that the defendant agreed with the president to loan the company the sum of eight thousand nine hundred and thirty-eight dollars and seventy-five cents to pay off the Daly & Son mortgages, and the further sum of one thousand four hundred and forty-five dollars to pay certain dishonored checks drawn by the company, provided that the president would secure the payment thereof, and of the said previous indebtedness, which proposition was assented to by him for the company; in pursuance of such agreement, and to secure the defendant in the payment of said sums, the president and secretary of the company executed and delivered, on the nineteenth day day of January, eighteen hundred and ninety-two, to the defendant, two chattel mortgages upon the stock of goods, wares, and merchandise, musical instruments, and fixtures of the company, but subsequently it was discovered that a mistake had been made therein, in describing the organs and pianos, and, on the twenty-fifth day of January, eighteen hundred and ninety-two, they executed

and delivered to the defendant two other chattel mortgages to correct such misdescriptions; that such chattel mortgages were duly filed in the proper office, but the recorder was requested not to give the same out for publication in the daily abstract. The evidence further discloses that there were other mortgages executed by the president and secretary, for the company, to several persons before these mortgages were made and delivered to the defendant.

There is no doubt that the company, under its articles of incorporation, had the authority to execute such chattel mortgages, but there is no authority given to the president to execute them, except such as may be found in the interlined resolution to which reference has been made. All the directors who were present when that resolution was adopted deny that any such power was intended to be conferred on the president, or that anything was said in reference to it. Their evidence also indicates that the president was the guiding spirit of the the company; that their meetings were conducted in a careless manner, and that, from the confidence which they then reposed in him, he could doubtless have obtained the power to make such mortgages if he wanted it. At that time there seemed to be no necessity for such power; it was when he wished to procure a loan from Daly & Son, who required a chattel mortgage, and to see his authority to give it, that he recognized the necessity of such power, and learned that he could not obtain such loan unless he could exhibit his authority from the company to make the required mortgage. It was doubtless to meet the exigence of this occasion that the words to which we have referred were interlined in the resolution. In view of these considerations, and the appearance of the interlined words, we are satisfied that the mortgages given to Daly & Son, and to defendant, were not authorized by

the board of directors, either by resolution or any other express manner. Nor is there anything in the evidence to indicate that any of the directors, except the president, had any actual notice or knowledge of such chattel mortgages until the twenty-ninth day of January, eighteen hundred and ninety-two, when the defendant took possession of the stock of goods, musical instruments, and fixtures of the company under his chattel mortgages; so that when Durand, as president of the corporation, in its name, and using its corporate seal, undertook to execute these mortgages to the defendant, he did so without authority from the board of directors, and, being thus executed, the company was not bound by them unless it afterward ratifies them.

1. The general agent of a corporation is not authorized to mortgage its property as a security for a loan, without specific authority from the board of directors: *Luse* v. *Isthmus Ry. Co.* 6 Or. 125, 25 Am. Rep. 506. This being so, the inquiry now is whether the facts in evidence are sufficient to show such ratification or acquiescence in the unauthorized acts of the president in the execution of these mortgages as would bind the company. It appears that for several years prior to the transactions mentioned, E. Durand was the general manager of the corporation; that its business was carried on and conducted by him as president and manager, and that the board of directors were careless and negligent in not knowing, and keeping themselves informed as to, the condition of the business, and the manner in which Durand, as president, was conducting the same and dealing with its property. It further appears that the directors had access to the minute-book in which the interlined resolution authorizing the president to mortgage the property, was recorded, and, by ordinary attention to the duties which devolved upon them, could have discovered such

interlineations; yet such resolution was allowed to remain upon the record in that form, unknown to them, until the defendant took possession of the property under his chattel mortgages. They paid little or no attention to the management of the company's business; nor do they seem to have known anything about its financial condition, except that it was in debt, and that its president was borrowing money, and making provision in his own way for the payment of its obligations. When the lamentable condition of the business of the company is considered, as a result of Durand's mismanagement, and the manner in which he conducted it, the directors' ignorance or want of knowledge of its affairs can find its only justification, if at all, in the implicit confidence which they reposed in him and his management. Other mortgages, prior to those mentioned, had been given by him on the property of the company in the regular course of its business, but without any express authority therefor. Nor is this all. When the defendant took possession of the stock of goods included in the chattel mortgages, and proceeded, with their knowledge, to sell off and dispose of it, they took no steps to prevent the same, or to disaffirm the execution of such mortgages; nor did they make any effort to refund or repay the moneys mentioned, which had been used in the business of the company, or do anything in reference thereto until several months thereafter, when the present suit was instituted. A few days before the defendant took possession of the stock of goods, the president of the company absconded, and went to parts unknown, and so remains, and a few days thereafter another director left the state. In view of the policy of the board of directors of the company, under the circumstances, when they had full knowledge of the unauthorized act of its president, and took no steps to disaffirm his authority to execute such mortgages on

behalf of the company, we think they have acquiesced in the execution of said mortgages, and that the same have become binding upon the company, as though authority was originally given to execute them.

"The law is well settled that a principal who neglects promptly to disavow an act of his agent by which the latter has transcended his authority makes that act his own; and the maxim which makes ratification equivalent to a precedent authority, is as much predicable of ratification by a corporation as it is of ratification by any other principal, and it is equally to be presumed from the absence of dissent": *Kelsey* v. *National Bank of Crawford Co.* 69 Pa. St. 429. Mr. Morawetz says: "Acquiescence is good evidence of consent; and if the agents of a corporation who have power to ratify an unauthorized act performed by another agent manifest no dissent after having received full notice, a ratification of the act may often be presumed": Morawetz on Private Corporations, § 633. And Mr. Beach says: "Ratification by directors may be made by accepting the report of a committee stating the facts, or by the acquiescence of a majority of the directors, with full knowledge of the contract so ratified. Ratification may be also presumed from a failure to exercise promptly the right of disaffirmance": 1 Beach on Private Corporations, § 195. In *Sherman* v. *Fitch*, 98 Mass. 59, where an action was brought upon a mortgage executed by the president of the corporation without formal authority the court says: "The remaining consideration relates to the authority of Sampson to execute the mortgage in behalf of the corporation. It is not necessary that the authority should be given by a formal vote; such an act by the president and general manager of the business of the corporation, with the knowledge and consent of the directors, or with their subsequent and long continued acquiescence, may properly be regarded

as the act of the corporation. Authority in the agent of a corporation may be inferred from the conduct of its officers, or from their knowledge and neglect to make objection, as well as in the case of individuals."

2.  The next objection is that the chattel mortgages were fraudulent and void as against creditors. The defendant contends that they are shown, by the evidence and circumstances attending the transaction, to have been made and executed on the part of the president of the company with the intent to hinder, delay, and defraud its creditors, and that the defendant actively participated in such intent. This contention proceeds upon the idea that the object of Durand, as president, in making such mortgages, was to put the property under cover, so that he could carry on the business and hold the other creditors off for an indefinite period, and that the defendant, having knowledge of such purpose, aided him in its execution. At the time the mortgages were taken the company was actively engaged in business, and had been for several years. It is probable, in the light of subsequent events, that it never was solvent, and its collapse was only a question of time. Now that the character of its president stands revealed, he seems to have been an adventurer, adroit and unscrupulous, full of confidence in himself and the successful accomplishment of his business plans, which, in some instances, involved actual criminality; yet when these transactions took place he had been president of the company for several years, and under his management it had done a large business in selling goods and borrowing money, which indicated that it was generally regarded by the business community as solvent, and that its manager possessed their confidence. He had borrowed large sums of the defendant at different times, and the circumstances under which the mortgages in question were made and taken has already been

detailed.    There is no doubt that the defendant was
anxious to make himself secure; the previous indebted-
ness of the company to him, and the sum to be advanced
to pay Daly & Son, were large, and in all his prior trans-
actions with the president he had required collateral
security for loans.    There was, therefore, nothing out of
the usual order of affairs in his taking security, and, as
the Daly & Son indebtedness was secured by a mortgage,
it could hardly be expected that he should relinquish
such security, or do otherwise than he did in the exercise
of ordinary business prudence.    It may be true that the
fact of the mortgage covering the entire property sug-
gested to his mind that the company was in failing cir-
cumstances, and, even if it did, it would be nothing more
than ordinary business caution for him to secure himself
against loss; and, if in so doing, he acted in good faith,
the transaction was not fraudulent.    It is only when the
mortgage is given and received with the intent to hinder
and defraud creditors that it is void, and not when it is
taken by the mortgagee for the honest purpose of secur-
ing a valid claim or indebtedness.    It may be that Durand
knew the business of the company must collapse sooner
or later; yet his conduct indicates that when these trans-
actions occurred he thought he would be able to meet the
obligations of the company to the other creditors, and
carry on the business for some time at least.    But, how-
ever that may be, even if we assume that his object in
making the mortgages was to hold off his creditors, unless
the defendant participated in that purpose or connived at
his design to hinder and delay them, such mortgage
would not be fraudulent or void.

The statute, section 3053, Hill's Code, avoids the mort-
gage or conveyance when it is made and taken by the
parties to it with the intent to hinder and delay the cred-
itors of the mortgagor.    It is the purpose of the convey-

ance to which the statute has reference, and hence it is the intent or purpose of the parties in giving and receiving the mortgage which constitutes the test of its validity. .It is not enough that the claim or debt secured by the mortgage may be valid, although that circumstance is an important factor in the transaction, if such mortgage was made and taken by the parties with intent to hinder or delay creditors. Now, although the defendant may have thought that the company was in failing circumstances, and that its president sought by the mortgages to hold off its creditors until its financial difficulties could be tided over, yet if the mortgage was valid on its face, and accepted by the defendant without any secret trust, or any understanding in furtherance of such object, or connivance or participation in such fraudulent intent, but for the purpose of securing the payment of the debt, such mortgages are not fradulent or void. The mere fact that hindrance and delay would necessarily result from the execution of such mortgages would not render them fraudulent. Every mortgage upon the property of the debtor necessarily tends to hinder and delay creditors, and especially so when it covers the entire property of the mortgagor, as in that case its effect would be to deprive other creditors of all means of obtaining satisfaction of their equally meritorious claims; yet, if the mortgage was received by the creditor in good faith, to secure the payment of a valid debt, the delay and hindrance necessarily arising therefrom is not a fraudulent hindrance in the sense of the law. This results from the fact that it is lawful for a debtor to prefer one creditor to another, or to secure one and leave another unsecured; notwithstanding his motive may be to prevent his other creditors from collecting their demands, the delay or hindrance occasioned thereby to such creditors is not within any legal prohibition. The reason is that where

there is a valid debt and a real transfer, there is no ground upon which to predicate collusion or fraud.

To avoid a mortgage or other conveyance as fraudulent and void, there must be a real design on the part of the mortgagor, in which the mortgagee participated, to withdraw his property from the claims of his creditors. The real question there, is whether the president of the company made the mortgages in question with intent to defraud, delay, or hinder its creditors, and whether the defendant accepted them with knowledge of that design, and with intent to promote its accomplishment. There was some evidence tending to show that the president of the company thought, or expected, that if he could procure a loan from the defendant whereby he would be able to liquidate the mortgages to Daly & Son, who were demanding payment, and at the same time secure the defendant by a mortgage upon the stock of goods, it would enable him to tide the company over its difficulties, and hold off its other creditors until he could make some other arrangements for paying them, which he contemplated. If Durand had in mind, beyond securing the indebtedness to defendant, the purpose to use the mortgages as a cover to withdraw the mortgaged property temporarily out of the reach of the company's creditors, he could not make such purpose effective without consent and coöperation of the defendant, and there are no facts or circumstances tending to show that the defendant connived at or participated in such purpose, or that the mortgages were taken with the secret understanding that they should be used as a means to hold off or baffle other creditors. The anxiety of the defendant to secure his demand, and the money which he advanced to pay off the Daly & Son mortgages, shows that in the race of diligence he was vigilant and attentive to his own interests, but there are no facts or circumstances connected

with the transaction which satisfy us that the defendant connived at, or participated in, any fraudulent design that Durand may possibly have contemplated. If the mortgages appropriated only a fair amount of property as security for the indebtedness, although it was all the property of the company, the fact that the defendant may have known that Durand in making such mortgages had the design to hinder and delay other creditors, would not vitiate them, if the defendant did not accept them with the intent to aid him in such design but solely to secure the payment of his claim against the company. Mr. Bump says a creditor "does not violate any principle of the statute when he takes payment or security for his demand, though others are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims, and though he may be aware of the intent of the debtor to defeat the collection of them. Fraud, in its legal sense, cannot be predicated of such a transaction. Wherever there is a true debt, and a real transfer for an adequate consideration, there is no collusion": Bump on Fraudulent Conveyances (2d Ed.), p. 187.

3. A debtor has a right to secure a creditor, and, if he does so by giving a mortgage, it is what the law admits to be rightful, although the effect will be to hinder other creditors, and he so intends; yet, if such mortgage is accepted in good faith, it is not a fraudulent hindrance, because the debtor has not disposed of his property in a way to prevent its application to the satisfaction of his *bona fide* debts: *Sabin* v. *Columbia Fuel Co. ante*, p. 15, 34 Pac. 694. To hold otherwise would be to establish as a rule what BLACK, C. J., says "requires a man to take care of his neighbor's interest at the expense of his own," and which he thinks "is utterly impracticable in the present state of human society": *Covanhovan* v. *Hart*, 21

Pa. St. 501, 60 Am. Dec. 57. As the company was car-
rying on its business with the expectation of its continu-
ance at the time when these transactions occurred, and
was what is sometimes called a "going concern," we have
not deemed it necessary to consider the question as to the
right of an insolvent corporation to prefer creditors.

4. The mortgages contain no power of sale in the
mortgagor for his own benefit, nor is there anything
therein which the court can say is unlawful. The mort-
gagor is allowed to remain in possession of the goods, but
he is required to keep a strict account, and pay over the
proceeds, less the expenses of the business, to the defend-
ant; and it is perfectly evident that by honest conduct
under these mortgages there could be no fraudulent re-
sult. The facts show that the president of the company
did account for and pay over the proceeds of the stock
some time between the ninth and twenty-ninth of Jan-
uary, eighteen hundred and ninety-two, and furnished
written statements of sales made for cash, and of some
few small goods that were sold on credit, and these latter
sales being contrary to the terms of the mortgages, the
defendant became dissatisfied, and on the last named
date took possession of the stock of goods and proceeded
to sell and dispose of it. The record discloses the amount
of sales made by him, and the stock remaining on hand
and under his control when the present suit was com-
menced. The fact that the sales of a few small goods
were on credit and the failure to render proper accounts,
thereby violating the terms of the mortgage, gave rise to
the inference that the president was allowed to remain in
possession of the goods, and to use the proceeds for his
own benefit; but the evidence shows that Durand re-
mained in possession only about twenty days, and that,
as soon as the defendant discovered that the accounts
were not kept as they should be, he took possession of

the stock. Under these circumstances we do not think that the sales of these small goods, which brought but a trifling amount, ought to operate to render the mortgages void. The defendant was vigilant, and his conduct indicated that he intended that the terms of the mortgages should be strictly observed, and that any departure therefrom would not be tolerated. We think, therefore, that the mortgages were valid, and constitute a lien on the property, and that the defendant is entitled to hold and retain the same and the moneys arising therefrom until the company's indebtedness to him is fully paid.

5. It is further contended that the company is entitled to the possession of certain promissory notes, which it is claimed that Durand as president delivered to the defendant as additional security for such mortgage indebtedness. The facts show that the notes were payable to the company, and were not indorsed to the defendant, but were simply handed over to him by verbal delivery. The evidence is conflicting in regard to the circumstances under which such delivery was made. The defendant testifies, in effect, that after he took possession of the stock he demanded additional security, and that the president of the company handed those notes to him with the remark, "Here; I will turn these notes over to you as additional security," and that he said "All right," and took the notes. Mr. Anderson, who was placed in charge by the defendant, testified that the notes were turned over to him by the president to assist or to be used in paying running expenses, and that while the notes were in his charge, and in the safe, Durand asked for them, and upon their delivery to him he was about to deliver some of them, amounting in face value to about fifteen hundred dollars to another creditor, when he (Anderson) protested, and telephoned the defendant

what Durand proposed to do, whereupon the defendant, soon after, came over and took the notes, against his will and understanding, and carried them off. The president had no authority other than that derived from the resolution, to which reference has been made, to deliver such notes as collateral security. It is extremely doubtful if such resolution authorized him to use such notes for that purpose, and, in view of the fact of conflict in the evidence whether or not they were ever delivered to him as additional security for the indebtedness, we do not think there was such a delivery as would constitute an equitable assignment of such notes, or entitle the defendant to retain the same, or the moneys collected thereon, until his indebtedness should be paid, or at all. The facts show that he has collected upon such notes the sum of three thousand one hundred and forty-two dollars and fifty-five cents, and that he has the same in his possession or under his control. The finding of the trial court, therefore, in respect to such notes, is set aside, and the defendant is required to turn over the above mentioned sum as collected on such notes to the receiver for the company, and also to deliver to him the notes remaining in his hands and unpaid in whole or in part.

The next objection relates to certain contracts which were delivered to William A. Currie, the receiver of the company, and plaintiff in this suit, by the president by way of a pledge for a debt owing to him, or money advanced for the company. The facts show that defendant paid Currie one thousand two hundred and ten dollars for such contracts, which secured the possession of the same, and that Currie credited the company with the amount of this money when so paid. Upon these contracts the defendant has collected in cash the sum of one thousand one hundred and thirty-six dollars and forty-six cents and those uncollected are still in his possession.

As the facts show that the money received from the defendant in payment for these contracts was applied to the discharge of the company's obligations incurred for freight, the trial court held that the defendant was entitled to hold such contract and all money collected thereon, or which he may receive, until he realizes the sum of one thousand two hundred and ten dollars, the amount paid for them, and that after realizing said amount he should transfer said contracts to the plaintiff. Without further detail, we think, in view of all the facts and the circumstances surrounding them, that this finding is correct and should be sustained. From these considerations it follows that the decree must be modified so as to conform to the views herein expressed, and it is so ordered, and that the plaintiff recover his costs and disbursements in this court.                                 MODIFIED.

[ Argued Dec. 26, 1893; decided Feb. 14, 1894; rehearing denied.]