Argued 11 October, decided 27 November, 1905.

## REID v. ALASKA PACKING CO.

83 Pac. 139.

Principal and Agent— Authority to Warrant.

1. A mere selling agent cannot warrant the property sold in any particular, unless such property is usually sold under a warranty.

For instance: A selling agent for a corporation which deals only in Alaska salmon has no authority to sell for the corporation salmon taken from other than Alaskan waters, or to warrant that the salmon sold by him shall be equal to salmon not found in Alaskan waters, and not dealt in by the corporation.

Disaffirmance by Principal of Unauthorized Acts of Agent.

2. Where an agent exceeds his authority in contracting for his principal, the principal, upon being fully informed of the facts, must, within a reasonable time, disaffirm the act of his agent, where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified such unauthorized act, and such ratification will be equivalent to a precedent authority.

Rules of Agency Apply to Corporations.

3. The rule of agency requiring reasonably prompt disavowal of the unauthorized acts of an agent is applicable to corporations as well as to individuals.

Example of Unratified Act of Unauthorized Agent.

4. A secretary of a corporation, whose duties are prescribed by the by-laws, and who is without authority to make any contracts on behalf of the corporation, unless authorized by the board of directors, cannot ratify an unauthorized contract made by an agent of the corporation.

Idem.

5. Where a corporation promptly disaffirmed the unauthorized act of its selling agent in warranting goods sold, its act in afterward shipping the buyer samples of its goods does not constitute a ratification of the agent's unauthorized act in making the warranty.

Scope of Agent's Authority Must be Ascertained.

6. A principal is not bound by the acts of his agent unless they are within the real or apparent scope of the authority of such agent, and one dealing with an agent of a corporation is bound at his peril to ascertain the extent of the agent's authority, and is chargeable with knowledge thereof.

Duty of Principal to Disaffirm Acts of Agent.

7. Where a buyer knew or was chargeable with knowledge that the seller's agent had no authority to bind the seller by a warranty clause in the contract of sale, it was the duty of the buyer, if it wished to rely upon the warranty, to ascertain whether the agent's act had been ratified by the seller, and in the absence of knowledge by the seller that the buyer was relying upon the warranty it was under no duty to advise the buyer of its disapproval of the agent's act.

From Clatsop: Thomas A. McBride, Judge.

Statement by Mr. Justice Bean.

This is an action by Reid, Murdoch & Co., against the Alaska Fishermen's Packing Co. The plaintiff is a Chicago company, engaged in buying and selling salmon, and the

defendant is an Oregon corporation, with its principal office in Astoria, but engaged in packing salmon in Alaska. In March, 1899, defendant employed C. M. Webber & Co., brokers in Chicago, to act as its agents "in selling its salmon" in Illinois and adjoining states. The contract of brokerage was negotiated through Frank Patton, of Astoria, who, under arrangements with Webber & Co., was to receive one half the commissions on sales made by them under the contract and act as their Coast representative. On March 29 Webber & Co. wired Patton of an offer of the plaintiff to buy 2,500 cases "Alaska salmon quality guaranteed fully equal to best Puget Sound Sockeye." Patton, thinking that he could place this offer, so advised Webber & Co., and on April 3 they wired him that they had sold, subject to confirmation, "2,500 cases one-pound red Alaska salmon, talls, unlabeled, loss vessel or destruction of cannery cancels contract, all other conditions, terms, guaranties, shipments, as per our telegram 29th ultimo, 30th ultimo, confirmed." This sale was satisfactory to Patton, and he requested that contracts therefor be forwarded to him. Thereupon Webber & Co. entered into a contract with the plaintiff to sell and deliver to it, for account of the defendant, 2,500 cases of salmon, shipments to be made as early as any Puget Sound salmon; but, in place of stipulating for Alaska salmon, they agreed that defendant would sell and deliver "2,500 cases one-pound, tall, fancy sockeye salmon, * * quality to be equal to the best Puget Sound Fancy Sockeye"— a quality and kind of fish not found in Alaska, or packed or dealt in by the defendant. A written memorandum of the contract was forwarded by Webber & Co. to Patton, who delivered it to the officers of the defendant; but they refused to accept or confirm it because the company did not pack or deal in sockeye salmon or salmon of the quality specified therein, and it would not agree to furnish fish of that kind and quality. The memorandum was

thereupon returned to Webber & Co., and on April 29, at their request, the contract with plaintiff was modified by stipulating that the fish might "be packed in Alaska," but should "be exactly like Puget Sound Fancy Sockeye." The fish packed by the defendant were not of the quality called for in the contract, and it refused to furnish or deliver any other fish, whereupon the plaintiff brought this action to recover damages for a breach of the contract. The defendant denied that it ever made or authorized the making of the contract in question, or approved or ratified the same, or that it ever became bound by it; and this was the principal question on the trial. At the close of plaintiff's testimony the court granted an involuntary nonsuit, and the plaintiff appeals.            Affirmed.

For appellant there was a brief and an oral argument by *Mr. Frank Spittle.*

For respondent there was a brief over the name of *Fulton Bros.*, with an oral argument by *Mr. George Clyde Fulton.*

Mr. Justice Bean delivered the opinion of the court.

1. Webber & Co. had no authority to sell for defendant sockeye salmon, or to warrant that the quality of the fish which they agreed to sell to the plaintiff should be equal to the best Puget Sound Fancy Sockeye. They had nothing but a power to sell fish packed by the defendant company, and had no authority to warrant that such fish should be of a quality not found in Alaskan waters or packed or handled by the defendant. A mere selling agent, without express power to warrant, cannot give a warranty which will bind his principal, unless the sale is of a class which is ordinarily accompanied by a warranty: *Smith* v. *Tracy,* 36 N. Y. 79 ; *Wait* v. *Borne,* 123 N. Y. 592 (25 N. E. 1053.)

2. In order, therefore, to make the defendant liable on the contract, it was necessary for the plaintiff to show that it had ratified or affirmed it. There is no contention that

the contract was expressly ratified, but it is claimed that there was evidence tending to show an implied ratification by silence and acquiescence. The evidence to support this position consists of the testimony of Patton, of Moen, the president of the defendant, and of Frost, a member of the firm of Webber & Co., and some letters and telegrams. Patton testified that he was acting for Webber & Co., attending to their business on the Coast; that he received from them and delivered to the officers of the defendant a written memorandum of a contract made on its behalf with the plaintiff; that the officers did not seem qualified to accept it because, as they said, the company was selling red Alaska salmon only; that they would present the matter to the board of directors and it would take some action in the premises; that he was afterwards advised that the contract was rejected, as he understood it, by the board of directors, and in the latter part of April the memorandum was returned by him to Webber & Co. Moen, who was the president of the defendant at the time, testified that he saw the memorandum of the contract in the office of the company shortly after it was received from Patton; that he told Patton that he objected to it because of the quality of fish specified; that a meeting of the board of directors of the company was immediately called, and the contract was rejected; that the memorandum was sent back to Webber & Co., and they were advised that it would not be accepted or ratified; that the memorandum afterwards came back to the company, through Patton, who delivered it to the secretary, but that the contract was never accepted or ratified, although the memorandum remained in the office for some time.

On April 24, 1899, the secretary of the defendant wrote Webber & Co., acknowledging the receipt, through Patton, of a contract with the plaintiff for 2,500 cases of salmon, one-pound talls, at one dollar per dozen, f. o. b. Astoria,

and on the 19th of June advised them that at a recent meeting of the board of directors the contract made through them with the plaintiff was considered, and that, as the defendant was not a packer of the kind of salmon specified, it could not accept the contract. Mr. Frost, a member of the firm of Webber & Co., came West about this time to adjust the misunderstanding, if possible. He testified that, immediately upon his arrival at Astoria, a meeting of several of the directors of the defendant, the secretary, Mr. Patton, and himself, was held in Patton's office; that the only question in dispute was the provision in the contract concerning the quality of fish to be delivered, as the right of Webber & Co. to make the sale was admitted; that witness explained to the parties present that, owing to the delay of the defendant in objecting to the terms of the contract, it had become fixed, and stated to them that Webber & Co. had in their office in Chicago a written statement from the buyer of the plaintiff that he understood that the salmon might be packed in Alaska; that it was thereupon agreed that, if Webber & Co. would send to the defendant this paper or a sworn copy, it would approve the contract. Whether the statement or memorandum referred to by Frost was ever sent to the defendant is not shown by the testimony, but probably not, or, if it was, it was not satisfactory; for on June 28 the contract was returned to Frost by the secretary of the company in a letter saying, among other things: "We do not think it necessary to explain the matter of sockeye any further." The matter seems to have stood in practically this condition until September 9, when the defendant shipped a sample of its salmon to the plaintiff and wired asking about labeling and shipping. The sample did not equal Puget Sound Fancy Sockeye, and the defendant was informed by plaintiff of that fact and that it must have the quality called for, when it wired: "Samples sent equal best packed.

We consider contract canceled." There was some further correspondence between the plaintiff and defendant in reference to the dispute, but it has no particular bearing on the question now under consideration. The single question is whether this testimony was sufficient to carry the case to the jury on the question of ratification.

The rule is elementary that when an agent, in contracting for his principal, exceeds his authority, the principal, upon being fully informed of the facts, must, within a reasonable time, disavow or disaffirm the act of his agent, especially in cases where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified and affirmed such unauthorized act, and such ratification will be equivalent to a precedent authority: Mechem, Agency, §§ 155, 157; *Saveland* v. *Harlow*, 40 Wis. 431, 438; *Heyn* v. *O'Hagen*, 60 Mich. 150 (26 N. W. 861).

3. This rule is as applicable to corporations as individuals (*Currie* v. *Bowman*, 25 Or. 364, 35 Pac. 848; *Shepard* v. *Briggs*, 26 Vt. 149), and has its foundation in the doctrine of equitable estoppel. It proceeds upon the maxim that, if one remains silent when in conscience he ought to speak, he will be debarred from speaking when in conscience he ought to remain silent. But, in this case, the evidence shows that the defendant did not remain silent when informed that Webber & Co. had exceeded their authority by warranting the quality of the fish which they agreed to sell to the plaintiff on the defendant's account. On the contrary, it immediately repudiated the act and has continuously disaffimed the contract. Patton, through whom the business was transacted, was informed, when he delivered the memorandum of the contract to the officers of the defendant, that they could not accept or ratify it, because the defendant was not packing or dealing in fish of the quality specified therein; and Moen, the president of the company, when advised of

the contract, immediately disaffirmed it and it was afterwards formally rejected by the board of directors.

4. The acknowledgment on April 24 by the secretary of the defendant of a copy of the contract through Patton, and his failure to notify Webber & Co. that it had been disaffirmed or rejected until June 19, is no evidence of a ratification by the defendant. Webber & Co. had been advised previous to that time, through their correspondent Patton, that the defendant had disaffirmed and disavowed the contract. The secretary's duties were prescribed by the by-laws of the defendant, and he had no authority whatever to make any contracts for or on behalf of the company, unless authorized by the board of directors, and so could not ratify an unauthorized contract made by some other agent.

5. Nor was the shipment by defendant to plaintiff of samples of fish in September a recognition or ratification of the warranty clause in the contract previously made with it by Webber & Co. Webber & Co. had authority to bind the defendant by contracting for the sale of its salmon. The defendant had promptly disavowed and disaffirmed their unauthorized act in making the warranty; but it had not repudiated the entire contract on that account, nor is there any evidence that the plaintiff had declined to be bound by the contract without such warranty. The shipment of the samples was due to the desire of the defendant to comply with a contract which its agents, Webber & Co., had authority to make, and not in affirmance or ratification of their unauthorized acts.

6. It is contended that the defendant should have notified the plaintiff of its disaffirmance of the contract, and that by its omission to do so it ratified and affirmed it. A principal is not bound by the acts of an agent unless within the real or apparent scope of the authority of such agent (2 Page, Contracts, § 967), and one dealing with an

agent of a corporation is bound at his peril to ascertain the extent of the agent's authority and is chargeable with knowledge thereof: *Hotel Co.* v. *Furniture Co.* 73 Mo. App. 135; *Busch* v. *Wilcox*, 82 Mich. 336 (46 N. W. 940); *Lister* v. *Allen*, 31 Md. 543 (100 Am. Dec. 78). The plaintiff therefore knew, or was chargeable with knowledge, that Webber & Co. had no authority to bind the defendant by the warranty clause in the contract, and that such clause could have no force or effect unless subsequently ratified or affirmed by the defendant.

7. It was the duty of the plaintiff, if it relied upon the warranty, to ascertain whether the unauthorized act of the agent in making it had been approved by the principal, for, without such approval, it was invalid. There was no evidence that defendant knew that plaintiff was relying or acting upon the warranty clause. It was not its duty, therefore, to advise them of its disapproval. It was sufficient when it promptly disaffirmed and disavowed the unauthorized act of its agent and refused to be bound thereby. As is said by the Supreme Court of Vermont: "It is the duty of one trading with an agent who has only a limited and special authority to make inquiry as to the extent of the agent's authority; if he omits inquiry, he does so at his peril. It is not the duty of the principal, upon hearing of the sale by the agent, to seek the purchaser and give him notice of his claim, and his omission to do so, his mere silence, are not ordinarily to be construed as a ratification of the sale. If special circumstances may be supposed to exist, which would make it the duty of the principal to give such notice, none such are proved in this case": *White* v. *Langdon*, 30 Vt. 599, 603.

It follows that the judgment of the court below must be affirmed, and it is so ordered.      AFFIRMED.