Argued and submitted June 21, reversed November 8, 1989, reconsideration denied January 5, petition for review denied February 6, 1990 (309 Or 333)

# HITCHMAN,
*Respondent,*

*v.*

# WARREN et al,
*Defendants,*

# WARREN et al,
*Appellants.*

(23-666; CA A50295)

781 P2d 1237

Andrew M. Rich, Hillsboro, argued the cause for appellants. With him on the brief was Huffman, Zenger & Rich, P.C., Hillsboro.

Donald R. Moeller, Tillamook, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Rossman and Riggs, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this declaratory judgment proceeding, defendants Robert and Maxine Warren (Robert and Maxine) appeal from a judgment declaring that a deed that they received from Richard and Ann Warren (Richard and Ann) to property described as the gravel pit is null and void and quieting title to that property in plaintiff. Our review is *de novo*, and we reverse.

In the fall of 1979, plaintiff decided to sell a parcel of property in Tillamook County. The parcel is bisected by Highway 101. The portion to the west of the highway consists of 7.7 acres and a barn. The portion to the east of the highway consists of a house, approximately 30 acres and a gravel pit. Plaintiff listed the property for sale and, in response to the listing, Richard and Ann offered to buy the property on contract. The first contract, dated March 1, 1980, related to the property east of the highway only. It provided for a sales price of $115,000, with $10,000 down, monthly payments of interest only and periodic balloon payments until March 1, 1990. The second contract, executed May 1, 1980, provided for the sale of the property west of the highway, at a price of $70,000, with a down payment of $5,000, monthly payments of interest only and periodic balloon payments until May 31, 1990. Both contracts required plaintiff's consent to a sale of the property by Richard and Ann and provided that 80 percent of any sale proceeds be applied against the contract balance.

In September, 1981, Richard told plaintiff that he wanted to be free of his obligation with respect to the west side parcel (the 7.7 acres) and that he had found a purchaser for that property. He prepared a contract for the sale of that parcel by plaintiff to Cunningham. Under that agreement, Cunningham agreed to purchase the west side property for the sum of $90,000, with no money down and payments of interest only. The contract made no mention of the existence of the May 1, 1980, contract between plaintiff and Richard and Ann relating to the same property. Plaintiff never signed the agreement, although he recorded it on September 22, 1981, and does not challenge its validity.

By a quitclaim deed recorded October 16, 1981, Richard and Ann transferred to plaintiff all of their interest in the

May 1, 1980, contract relating to the west parcel, in consideration for which plaintiff gave them a credit of $25,000 against the principal balance owed on the March 1, 1980, contract for the sale of the east parcel.[1]

In the meantime, in September, 1981, without first seeking plaintiff's consent, Richard and Ann agreed to sell the gravel pit on the east parcel to Richard's parents, defendants Robert and Maxine, for $55,000 cash. Richard gave Robert and Maxine a receipt for payment in full, but did not deliver a deed at that time.

Richard later told plaintiff that he needed a deed to the house and two acres on the east parcel, so that he could borrow $56,000 from the Department of Veterans Affairs to remodel the house. Plaintiff gave Richard and Ann a deed under these circumstances: On March 1, 1982, plaintiff signed a contract that had been prepared by Richard selling three acres of the east parcel to Miller at a price of $36,000, with monthly payments of $150 (less than one-half of the accruing interest) and a balloon payment due on March 1, 1987. Also on March 1, 1982, Richard, Ann and plaintiff executed a new land sale contract prepared by Richard, relating to the remainder of the east side property, in which Richard and Ann agreed to pay $90,000 for that property, including the gravel pit. The contract provided:

> "It is agreed that this contract is entered into as a reformation and refinement of a prior land sales contract between the parties for this and adjoining parcels of real property and the primary intent of this contract is to refinance and reallocate the payments from buyer to sellers and to provide buyers with their title free from any contract interest of seller in two adjoining parcels of land that were subject to the previous contract."

The new contract showed a "down payment" of $61,000 and a balance due and owing of $29,000.[2] On the same

---

[1] The $25,000 apparently was intended to reflect the $5,000 down payment that Richard and Ann had made on the west side parcel and the $20,000 difference in the May 1, 1980, contract price to Richard and Ann and the $90,000 contract price to Cunningham.

[2] The $61,000 "down payment" consisted of the $25,000 credit given by plaintiff to Richard and Ann on the May 1, 1980, contract as a result of the Cunningham contract and an additional credit of $36,000 given to Richard and Ann as a result of the Miller contract.

date, plaintiff executed a warranty deed, again prepared by Richard, conveying to Richard and Ann the house, two acres and the gravel pit. The deed provides:

"The true and actual consideration for this deed is $1.00. The parties have today reformed and refined prior real estate sales contract for these and an adjoining parcel of real property. Such reformation is expressed in a new contract for which the consideration is $90,000.00. This deed is the complete and full fulfillment and satisfaction of the real estate contract between the parties as it concerns this property."

On March 30, 1982, Richard and Ann deeded the gravel pit to Robert and Maxine. The deed inaccurately described the property, and on July 2, 1982, Richard and Ann executed a quitclaim deed to Robert and Maxine with a correct description.

In June, 1983, Cunningham conveyed his property to plaintiff in lieu of foreclosure. In January, 1983, Miller conveyed his property to plaintiff by a quitclaim deed. Richard and Ann defaulted on the March 1, 1982, contract and plaintiff regained that property by foreclosure, with the exception of the gravel pit, which he later discovered had been deeded to Robert and Maxine.

■ Plaintiff's first several complaints alleged that he had been misled into believing that the March 1, 1982, deed from himself to Richard and Ann had described only the house and two acres, when, in fact, it also included the gravel pit, and that the deed therefore was *induced* by fraud. Plaintiff's sixth amended complaint alleged only that Richard's and Ann's July, 1982, transfer of the gravel pit to Robert and Maxine was a fraudulent conveyance and was therefore null and void. Despite the deletion from the pleadings of the allegations relating to the March, 1982, deed, the trial court held, and plaintiff now contends on appeal, that that deed was also a fraudulent conveyance within the meaning of *former* ORS 95.070.[3] We disagree.

In 1981, the time relevant to this case, *former* ORS 95.070 provided:

---

[3] In 1985, the legislature repealed *former* ORS 95.010 to ORS 95.100 and replaced it with the Uniform Fraudulent Transfer Act, ORS 95.200 to ORS 95.310. Or Laws 1985, ch 664, § 16.

"Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods or of things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents or profits thereof, *made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits,* damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered with the like intent, as against the person so hindered, delayed or defrauded is void." (Emphasis supplied.)

The statute does not encompass fraudulently *induced* transfers, as the trial court apparently concluded. The *grantor* is the one who must have acted "with the intent to hinder, delay or defraud creditors." Plaintiff did not deed the gravel pit to Richard and Ann with the intent to defraud himself, and that conveyance therefore was not fraudulent within the meaning of *former* ORS 95.070.

■ Plaintiff next argues that Richard's and Ann's July 2, 1982, transfer of the gravel pit to Robert and Maxine was a fraudulent conveyance. The evidence does not support that conclusion. The circumstances surrounding the transfer are not such as to create a presumption of fraudulent intent on the part of Richard and Ann.[4] *See Evans v. Trude et al. and Champlin et al.,* 193 Or 648, 656-57, 240 P2d 940 (1952). The sale was for cash. Richard and Ann reserved no benefit for themselves, and the transfer did not deplete their assets. The fact that the grantor and the grantee are related is not in itself sufficient to give rise to a suspicion that the conveyance was fraudulent. There is no indication that the price that Robert and Maxine paid for the gravel pit was not its market value, and there is no evidence that Richard and Ann and their grantees, acting together, had a design to defeat plaintiff's right as a creditor. *See Currie v. Bowman,* 25 Or 364, 381, 35 P 848 (1894).

It is apparent that the trial judge believed that Richard and Ann had taken advantage of plaintiff and that he sought to remedy the alleged harm by restoring the *status quo.* Whatever the culpability of Richard and Ann, however, they did not make a fraudulent conveyance within the meaning of

---

[4] The factors to be considered in determining the grantor's intent are now set out in ORS 95.230(2).

*former* ORS 95.070, which was plaintiff's theory of the case. Although we review *de novo,* we cannot reform the pleadings or develop a case for plaintiff on a theory neither pled nor argued. We conclude, therefore, that the trial court erred in entering judgment for plaintiff.

Reversed.