THE UTAH LUMBER COMPANY, a Corporation, Appellant, v. WILLIAM F. JAMES, Respondent.

No. 1415.  (71 Pac. 986.)

1. **Contract for Building Material: Plans Referred to: Part of Contract.**
   On acceptance of an offer to furnish finishing material for a building according to plans, specifications, and detail drawings, such plans, specifications, and detail drawings became a part of the contract.

2. **Same: Nature of Contract: Caveat Emptor.**
   A transaction whereby a lumber dealer agreed to furnish finishing material according to the builder's plans and specifications, which specified that all material must be thoroughly kiln-dried, hand-smoothed, and scraped, was not a mere sale on inspection, but was in the nature of a building contract, obligating the dealer to furnish and deliver the material according to such plans and specifications.

3. **Same: Latent Defects: Acceptánce.**
   The mere use of finishing material in a building without discovery of latent defects was not such an acceptance as to preclude the owner, on the defects appearing as seasoning progressed, from showing that such material was not furnished according to the agreement.

(Decided March 30, 1903.)

Appeal from the Third District Court, Salt Lake County.— *Hon. W. C. Hall,* Judge.

Action to recover a certain sum alleged to be due upon a contract wherein the plaintiff agreed to furnish certain material to be used in the construction of a house for the defendant. From a judgment in favor of the defendant, the plaintiff appealed.

AFFIRMED.

*L. R. Rogers, Esq.,* and *M. E. Wilson, Esq.,* for appellant.

It is the contention of counsel for the appellant that the property which is the subject-matter of this action was sold upon inspection to this defendant, and that those portions of the specifications which have been set out in the statement of facts and which relate to the quality and character of this material are not warranties, but are descriptive only. If this court should find such to be the case, then it is claimed on the part of the appellant that it follows as a matter of law that the taking of this material by this defendant and the using of the same and the attaching of it to his freehold without complaint or objection, is a waiver of any and all defects which were patent or readily discoverable by the exercise of ordinary diligence. To support the contention that this was a sale upon inspection, and that the taking of the material and using it was a waiver of all patent defects, we cite and rely upon Ashland Lime, Salt and Cement Co. v. Shores, 81 N. W. 136; Laycock v. Moon, 97 Wis. 59, 72 N. W. 372; Same v. Parker (Wis.), 79 N. W. 327.

*P. L. Williams, Esq.,* for respondent.

The question presented by the record in this case, as the pleadings and testimony show, is, what were the obligations of the plaintiff to the defendant under the convention had between them? Is it a building contract, specific in terms and requiring certain things to be done according to the terms agreed upon, or did it amount to a mere sale of chattels upon inspection, as contended by the appellant in its brief? We insist that it was essentially a building contract as the same is defined in the text-books and decisions. Plans and specifications were prepared by the architect and are in the accustomed detail. These, according to the testimony, were sub-

mitted to the plaintiff, and the plaintiff made a proposition in writing based upon these specifications and detail drawings, to furnish the material called for.

### STATEMENT OF FACTS.

This is an action to recover a certain sum alleged to be due upon a contract, whereby the plaintiff agreed to furnish certain material, of a specific kind and quality, to be used in the construction of a house for the defendant. It is alleged in the complaint, substantially, that the contract was entered into by the parties to the suit on June 27, 1900; that the material in dispute was furnished between September 15 and November 10, 1900, in accordance with the terms of the contract; that the defendant had agreed to pay $970 cash for the material upon its delivery and inspection; that the defendant paid $500 of the purchase price, but failed to pay the balance; and that the plaintiff filed a lien for such balance. The prayer is that the lien may be foreclosed.

In the answer, it is denied that the material was to be paid for upon delivery and inspection, or otherwise than upon the same being furnished in accordance with the terms of the contract, nor until the whole thereof was furnished complete, and to the satisfaction and acceptance of the defendant; and this, it is averred, was not done. It is also denied that the value of the material was $970, or any other sum, or that there is anything due the plaintiff, or that the plaintiff has performed the contract. By way of counterclaim, it was alleged in the answer that the plaintiff failed to perform the contract, and, specifically, that the material was not furnished at the time agreed upon; that, contrary to the express provisions of the contract, the material which was furnished was not thoroughly kiln dried, nor hand-sandpapered, nor hand-smoothed; that, in consequence of the unsuitable and unfit condition, after the same was attached to parts of the house,

it shrunk, twisted, and cracked to such an extent that its removal had become necessary; that it would have to be removed and discarded, and the same replaced with other suitable material; and that this would result in great damage to the defendant. The items of damages which it was claimed, would result, were specifically averred.

The plaintiff's defense to the counterclaim is a plea of an inspection of the material and an acceptance thereof by the defendant.

From the evidence it appears that the contract referred to in the pleadings was entered into between the parties about the time alleged; that it consisted in part of certain specifications, working plans, and detail drawings showing the plans of the building; that by oral agreement the material was to be delivered on or before August 1, 1900; that no delivery was made at that time, and no final delivery until about two months thereafter; that the material which was delivered was not thoroughly kiln-dried, but was unseasoned, and therefore unsuitable and unfit for use in the construction of the house; that the plaintiff never inspected or examined the material before delivery; that its unseasoned and unfit character was not detected by the defendant or his agents until after it had been attached to parts of the house, nor until the same began to shrink, twist out of shape, and show cracks; that the shrinking, twisting, and cracking is such as to render the material wholly unfit for the purpose for which it was designed; that it must be removed; and that such removal will cause great damage to the building. There is evidence showing various items of damages which resulted because of the defective material.

On the point as to whether the defects could, by the exercise of ordinary care, have been discovered by the defendant or his workmen, skilled in the use of such material, before it was placed in the house, there is some conflict in the testimony, but the great preponderance of the proof ap-

pears to be to the effect that the defects in the material were of such a character that they could not be discovered, .in the exercise of ordinary diligence, even by experts, until the lapse of time and opportunity to season disclosed them. At the trial, the court found that the plaintiff did not furnish the material in accordance with the contract, nor to the acceptance and satisfaction of the defendant, and that the same never was accepted by him. It allowed a number of items of damages in favor of the defendant, aggregating $2,503.75, and rendered judgment accordingly.

The plaintiff prosecuted this appeal.

BARTCH, J., having made a statement of the case, as above, delivered the opinion of the court.

The main question presented, under the pleadings and the evidence in this case, is, what obligations did the plaintiff assume by virtue of the contract between the parties? Did it obligate itself to furnish the material in dispute according to certain specific terms as to condition, kind, and quality, as insisted by the respondent, or did the transaction amount merely to a sale of chattels upon inspection, as contended by the appellant.

To determine the matter thus presented it becomes important, in the first instance, to ascertain from the proof what constitutes this contract, and then determine the obligations imposed and the rights created thereby. It appears from the evidence that the proposition which led to the contract was made by the plaintiff to the defendant's architect in writing, and, so far as material here, it reads as follows: "We are pleased to name you a figure of nine hundred and seventy dollars on the bill of finish for W. F. James' house, all according to your plans and specifications and details. . . . We will handle it in good shape and to the satisfaction of both yourself and the owner." This offer or proposal was accepted, and the contract awarded verbally. The time for

the delivery of the material was by oral agreement to be August 1, 1900.

It will be noticed that the proposal refers to the plans, specifications, and detail drawings for the building, which indicates the intention to furnish the material in accordance with them, and, upon acceptance of the offer, such plans, specifications, and detail drawings, under a familiar rule of law, became a part of the contract, equally binding as the proposal itself, and reference must be had to them to determine the nature and character of the contract, and the obligations and rights of the parties thereunder.

Referring, then, to the writings and drawings mentioned, and examining and construing them and the proposal together, it seems clear that the contract between these parties partakes of the nature and character of a building contract, and that the transaction was not merely a sale of the chattels upon inspection, where the maxim "caveat emptor" applies.

"A contract," says Mr. Lloyd, in his work on the Law of Building and Buildings (section 1), "is an agreement between two or more persons, for a valuable consideration, to do or not to do some particular thing; and when the undertaking refers to constructing, erecting, or repairing an edifice or other work or structure, it may be called a building contract." And in section 54 the author says: "The builder is bound to scrupulously follow the specifications, and can not justify a departure therefrom by substituting other details, although as good as those called for; he must execute the work almost to the very letter of his instructions. He is just as firmly bound by the terms of the specifications as by the covenants of the contract." City of Salt View v. MacRitchie, 134 Ill. 203, 25 N. E. 663; Cook v. Allen, 67 N. Y. 578.

Such being the law, the appellant was bound to take notice of the specific terms of its contract. It was bound, in order to avoid liability for damages, to furnish and deliver

the material in accordance with such terms, and it could not shake off its obligations by a failure to inspect the material before delivery. The law binds a party to such a contract to perform his undertaking. In this case the undertaking was to furnish the finishing material for the respondent's house according to his plans and specifications, and therein, among other things, it was specified that "all such material must be thoroughly kiln-dried, hand-smoothed, and scraped with cabinet scraper and hand-sandpapered." These provisions the appellant was obligated to follow. It could not substitute other unseasoned material for that specified, and having done so, as is clearly shown by the evidence, it rendered itself liable in damages as for a breach of contract. Nor did the fact that the respondent used the material and attached it to his freehold, before discovering the defects, and without making any complaint or objection thereto, under the facts and circumstances disclosed by the evidence, constitute a waiver of the defects, or relieve the appellant of its obligations or of its liability to the owner for damages which resulted by reason of its failure to properly perform its contract. The mere use of the material without discovery of the latent defects did not amount to such an acceptance as to preclude the owner, upon the defects appearing as seasoning progressed, from showing that the material was not furnished according to the terms of the agreement. Lloyd's Law of Buildings, sec. 22.

Nor, upon careful examination of the evidence, do we think the court erred in allowing the various items of damages. The damages assessed are only such as are the proximate result of the failure of the appellant to perform its contract, and merely constitute the pecuniary damage which the owner suffered. To such damages the defendant, under the facts and circumstances disclosed, was clearly entitled.

Entertaining, in this case, the views hereinbefore expressed, it becomes unnecessary to discuss the other points presented.

We find no reversible error in the record.   The judgment is affirmed, with costs.

BASKIN, C. J., and McCARTY, J., concur.