Argued March 28, affirmed April 22, rehearing denied July 1, 1919.

## SEASIDE, CITY OF, v. RANDLES.

(180 Pac. 319.)

**Contracts—Construction Contract—Waiver—Acceptance of Work.**

1. Acceptance of work done under a construction contract does not constitute a waiver of latent defects of which the owner was ignorant at the time or which may appear thereafter.

Municipal Corporations—Improvements—Sewer Contract—Acceptance of Work—Waiver of Defects.

2. Where sewer contract expressly stated that engineer or inspector was not authorized to accept or approve work not done according to the contract, and reserved to the city alone the power to accept and approve work, city's acceptance and payment of contract price, without knowledge of defects not discoverable by an ordinary inspection, will not be construed a waiver or an estoppel to claim damages for such defects upon discovery thereof.

Contracts—Building Contracts—Acceptance or Rejection by Architect.

3. A contract which provides for work of construction to be performed in the best manner, and the materials of the best quality, subject to acceptance or rejection of an architect or engineer, all to be done in strict accordance with the plans and specifications, does not make acceptance by architect or engineer final and conclusive, and will not bind the owner or relieve the contractor from the agreement to perform according to plans and specifications.

Municipal Corporations—Improvements—Acceptance of Work—Prima Facie Evidence.

4. The acceptance of work by municipality is only *prima facie* evidence that the work has been done in substantial compliance with the terms of the contract.

Principal and Agent—Misconduct of Agent—Violation of Instructions.

5. Principal is never charged with consequences of agent's misconduct in violating his instructions except for the protection of some third person who has been misled by a reliance on an ostensible authority of the agent.

Municipal Corporations—Sewer Contract—Authority of Inspector—Acceptance of Work.

6. Where sewer contract expressly stipulated that inspector or engineer was without authority to accept or reject the work when not done according to the contract, contractor had no right to suppose that the city engineer or inspector was authorized to permit any deviation from the contract.

Municipal Corporations—Sewer Contract—Breach by Contractor—Rights of City.

7. That city did not see fit to reconstruct sewer in precisely the same manner and according to the same plans and specifications under provision in contract giving it the right to so do upon contractor's breach did not affect the right of the city to recover damages for breach by contractor.

Municipal Corporations—Sewer Contract—Payment by City—Release of Surety.

8. Payment by city for work accepted by it under sewer contract, under the honest belief that work was done in the manner required by the contract, did not release the surety.

Municipal Corporations—Sewer Contract—Breach by Contractor—Measure of Damages.

9. On sewer contractor's failure to construct sewer according to plans and specifications, the city's measure of damages is reasonable

cost and expense of procuring the work and labor to be done and furnishing the necessary material in order to make the sewer system conform to the contract.

### Municipal Corporations—Sewer Contract—Breach by Contractor—City's Right of Action.

10. On sewer contractor's failure to construct sewer system according to the contract plans and specifications, city had the right to prove its damages without waiting for the sewer system to be reconstructed.

### Contracts—Building Contracts—Approval by Supervising Engineer—Collusion.

11. An owner is not bound as against his contractor by the acts of a supervising engineer or inspector in approving work done by the contractor where such approval is the result of either bad faith, collusion, or gross negligence.

### Municipal Corporations — Sewer Contract — Inspection of Work — Waiver.

12. That work on a sewer contract was performed in the absence of city engineer or inspector in violation of a contract, without objection by either inspector or engineer, was not a waiver by city of defects in the work, although the engineer or inspector knew work was being imperfectly done, where contract provided that engineer and inspector should not have authority to accept or reject work not performed according to the contract.

### Municipal Corporations—Sewer Contract—Breach of Contract—Action for Damages—Negligence of City Engineer or Inspector.

13. In city's action against sewer contractor for failure to construct sewer according to contract, where contractor denied that work was not constructed according to contract, the negligence of city engineer or inspector in examining and inspecting work was not material, the issue being whether or not work was done in accordance with contract plans and specifications.

### Municipal Corporations—Breach of Sewer Contract—Action for Damages—Burden of Proof.

14. City suing sewer contractor for failure to construct sewer according to contract plans and specifications has burden of proving that contractor failed to perform the requirements of contract specifically as mentioned in the complaint.

### Municipal Corporations—Sewer Contract—Action for Breach—Defenses.

15. In city's action against sewer contractor for failure to construct sewer according to the contract, it was no defense that the plans and specifications were defective, and that sewer, if constructed in accordance therewith, would have been worthless.

### Municipal Corporations—Action on Sewer Contract—Admissibility of Evidence.

16. In city's action against sewer contractor for failure to construct sewer according to contract, where contract expressly stipulated that city engineer had no authority to release contractor from a

necessary and important requirement of the contract, evidence that engineer had instructed contractor's foreman to deviate from plans and specifications was inadmissible.

**Pleading—Amendment of Complaint—Action on Sewer Contract.**

17. In city's action against sewer contractor for failure to construct sewer according to the plans and specifications, where contractor denied that work had not. been performed in accordance therewith, and where contract pleaded showed that city engineer had no authority to release contractor from an important requirement of the work, court properly refused contractor permission to amend complaint so as to allege that engineer had directed contractor's foreman to deviate from the plans and specifications.

**Evidence—Sample Sewer-pipe—Rebuttal of Expert Evidence.**

18. In city's action against sewer contractor for failure to construct sewer according to specifications requiring mortar to be made of two parts sand to one part of cement, where there was expert evidence for contractor that such mortar would disintegrate in a very short time, the sample sewer-pipe, laid six years prior thereto with use of same proportion of sand and cement, was admissible to show that mortar used in the joints did not disintegrate, such evidence being competent to rebut expert testimony.

**Municipal Corporations—Action on Sewer Contract—Instructions.**

19. In city's action against sewer contractor for failure to construct sewer according to plans and specifications, where contract required contractor to make joints tight and to fill every part of the joint with mortar where required, or oakum where required, instruction that it was contractor's duty to make a "tight joint" in each of the sewer joints, with cement mortar of the required mixture, was proper.

**Contracts—Construction—Province of Court.**

20. It is the duty of the court to construe a written contract.

**Evidence—Action on Sewer Contract—Admissibility of Evidence—Intentions of Witness.**

21. In city's action against sewer contractor for failure to construct sewer according to contract, involving issue of whether city had accepted the sewer, it was proper for city engineer, after having testified that in accepting, he relied upon contractor's statement, to testify that he would not have accepted sewer if he had known the true facts.

From Clatsop: JAMES A. EAKIN, Judge.

In Banc.

This is an action to recover damages for the failure of defendant Randles to construct a sewer in the City of Seaside in accordance with his contract, and the plans and specifications. The defendant Randles'

surety, the Aetna Accident & Liability Company, here-inafter referred to as surety, is also made a party defendant. The cause was tried by the court and a jury and a verdict rendered in favor of plaintiff. From a consequent judgment defendants appeal.

On July 7, 1914, plaintiff and defendant Randles entered into a written contract whereby Randles agreed for certain unit considerations therein expressed to furnish all materials, perform all labor and construct for plaintiff in the City of Seaside a sewer system which included one main sewer, with some 250 laterals, also including several manholes, etc., according to the plans and specifications which were made a part of the contract, and which are set out in full in the complaint. Those portions of the specifications which particularly bear upon the issues involved are as follows:

"2. Plans:

"This sewer shall be constructed in accordance with the plans and specifications on file in the office of the City Auditor and Police Judge. * *

"8. Inspection:

"The contractor shall not begin work on this sewer until he has notified the Engineer and an inspector has been placed in charge of the work. It shall be the duties of the inspector to direct the construction of the work and the manner of carrying on the same; also to inspect all materials used on the work and to approve or reject the same. No material of any kind shall be used on any part of this work until inspected and approved by the Engineer or Inspector and all rejected or condemned material shall be removed from the work at once. Instructions given by the inspector shall be respected and executed by the contractor, but no inspector shall have the power to waive the obligations of the contractor to furnish good materials or perform sound and reliable work as herein specified; and any failure or omission of the Inspector or En-

gineer to condemn any defective material or work shall not release the contractor of the obligation to at once tear out, remove and properly reconstruct the same at his own cost at any time upon the discovery of the defect, and upon receipt of the notice of the Engineer to do so.   No part of this sewer shall be constructed in the absence of an inspector and any work so performed shall be deemed in violation of these specifications, and the Engineer may order the same to be removed by the contractor and reconstructed at once.   Upon the neglect or refusal of the contractor to reconstruct work rejected by the Engineer within 24 hours after receipt of notice, the same may be removed and reconstructed under the direction of the Engineer at the expense of the contractor.

"16. LAYING:

"Before being laid, all pipe shall carefully be examined and passed upon by the Inspector.   The accepted pipe, before being lowered into the trench shall be fitted together, matched and marked in the order in which they are to be laid.   The trench shall be carefully shaped and graded to the line and grade given by the inspector.   Crosscuts deep enough to receive the bell of the pipe shall be cut in the bottom of the trench, so that the pipe has a solid bearing along its entire length, before being laid, the outside of the spigot and the inside of the bell shall be carefully cleaned.   The lower half of the bell of the preceding pipe shall be filled with cement mortar before the insertion of the spigot end, the pipe shall then be pressed into place so that the spigot end will be not more than one-quarter ($\frac{1}{4}$) of an inch from the shoulder of the bell, care being taken to have the inside surfaces of the pipes flush and even.   The bell shall then be filled flush with the outside all around, with cement mortar. pressing it into shape with the hand, carefully rounding it off at least one inch on the body of the entering pipe.   After being laid, the joint of each pipe must be carefully scraped smooth with a circular disk or swab to remove any surplus cement.   After the pipe has been laid and cemented, fine earth or sand shall

be carefully rammed under and halfway up the sides of the pipe before the next is laid.

"The cement mortar shall be composed of one part cement and two parts sand.

"The joints of all sewer pipe laid below an elevation of 7 feet, approximately 3,000 lineal feet, shall be laid with a gasket of oakum dipped in hot asphaltum of the proper consistency. The oakum gasket when thoroughly compacted with a caulking iron shall fill the bell to one-half (½) its length after which the joint will be cemented in the usual manner. * *

"29. Terms.

"The contractor will be paid monthly a sum equal to eighty per cent on all finished work, and each class of work as set forth in these specifications shall be considered separately and paid for; the remaining twenty per cent shall be paid upon the completion of the entire contract."

At the same time and as a part of the contract defendant Randles, as principal, and defendant Aetna Accident & Liability Company, a surety company, as surety, executed a bond in the penal sum of $12,921 guaranteeing the full and faithful performance of the contract, as well as the payment by the contractor for all material used in the construction of the sewer and labor performed thereon. The bond, a copy of which is set forth in the complaint, contained all the statutory requirements.

Upon the execution of the contract, Randles commenced work on the sewer system and continued working thereon until the twenty-second day of September, 1914, when he represented to the plaintiff that he had fully completed the same in accordance with the contract. Thereupon, plaintiff as it alleges having no knowledge to the contrary, and believing that the sewer had been properly completed and the work done in accordance with the plans and specifications, ac-

cepted the work and paid Randles in full therefor the sum of $12,885. That defendant Randles failed in several particulars to construct the sewer system in accordance with the plans and specifications. A part of the allegations in regard thereto being as follows:

"This plaintiff alleges that the said defendant Randles made the necessary excavation for the trenches for the main sewers to the proper depth, but fraudulently and for the purpose of cheating, wronging and defrauding this plaintiff, and for the purpose of securing the payment of the contract price for said work without performing the contract, without the knowledge of plaintiff, secretly and fraudulently, in the laying of said sewer pipe above seven foot elevation and also below seven foot elevation both in the main and laterals and branches, neglected to and did not fill the lower half of the bell of any pipe with cement mortar before or after insertion of the spigot end, which will be hereinafter referred to, for the sake of brevity, as joints of the pipe, but placed and laid said pipes together, namely, the spigot end into the bell end without placing any cement in the lower portion thereof, namely, the portion thereof lying upon the bottom of the trench, not exposed to view from the top or sides of the trench, being about one-fourth of the circumference of the pipe, such portions being left wholly without any cement mortar.

"This plaintiff further avers that the said defendant Randles purposely, secretly and fraudulently, with the intent and purpose aforesaid, and without the knowledge of plaintiff, in all that portion of the sewer pipe, including laterals, laid in trenches above the elevation of seven feet, did not place in the joints between the spigot end and the bell end of the sewer pipe resting upon the bottom of the trench and not exposed to view from the top or sides of the trench, being about one-quarter of the circumference of each pipe, any cement mortar, or any mortar at all, and in all portions of said sewer pipe laid below the elevation of seven feet did not place in that portion of the joints

or spigot end and bell end lying at the bottom of the trench, not exposed to view from the top or sides of the trench, being about one-quarter of the circumference, either oakum or cement mortar, or any filler at all, but left such portions of such pipes in each of said elevations, both above and below seven foot elevation, throughout the entire pipe or sewer line, entirely open and unclosed, so that water, gas and sand could pass freely from the outside into the inside of each joint of sewer pipe laid, and earth, water and gas did so pass, accordingly as hereinafter mentioned, all of which was done secretly and purposely by said defendant, for the purpose of cheating and defrauding plaintiff and without the knowledge or consent of plaintiff.

"That in all that portion of said sewer pipe above an elevation of seven feet exposed to view from the top and sides of the trench, being about three-fourths of the circumference of each joint, the defendant placed cement mortar, not of the consistency of one part of cement to two parts of sand, but a mortar consisting of a very small portion of cement, mixed with earth, debris and a large quantity of sand, and without any consistency and worthless for the purposes intended and required by said specifications.

"That in all that portion of said sewer system which required trenches to be excavated below an elevation of seven feet, which plaintiff avers consisted of over three thousand lineal feet, all joints of which, by the terms of the specifications and contract aforesaid, were required to be laid and filled with a gasket of oakum dipped in hot asphaltum of proper consistency, and thoroughly compacted with a caulking iron, filling the bell one-half inch, said defendant in manner and form only placed in that portion only of the joints exposed to view from the top and sides of the trench, not exceeding three fourths of the circumference of the pipe, a small and insufficient gasket of oakum, not dipped in hot asphaltum, and not compacted so as to fill the bell one-half inch; in fact, not to exceed one-quarter of an inch, and then in such portion of said

joints placed an alleged mortar, but such mortar was not one part cement to two parts sand, but contained a mixture of a very small portion of cement to a large mixture of earth and sand, with no consistency whatever, and worthless for any purpose, thereby rendering said sewer entirely open on the bottom side, with worthless mortar on the top side.

"This plaintiff further avers that no mortar used or employed by said defendant Randles in said work was composed of one part cement to two parts sand, but all mortar used and employed in laying said sewer pipe, including main sewers and laterals, was a worthless mixture, composed of very little cement, mixed with earth, debris and a large quantity of sand, with no consistency or strength, and pervious to water and elements and not of sufficient strength to hold the pipe together to prevent the escape of water or gas, and was entirely worthless for any purpose, all of which was wholly unknown to plaintiff at the time plaintiff accepted said work and paid defendant Randles therefor. That at the time plaintiff accepted said work, it believed said work to have been done honestly and in accordance with the terms of the contract.

"This plaintiff further avers that under the terms of said contract, plans and specifications, plaintiff was required to excavate 250 trenches, leading from the main sewers to the curb line, for laterals, and was required to lay sewer pipe therein accordingly as hereinbefore alleged, from the main sewer to such curb line. That said defendant, Randles, with the intent and for the purpose hereinbefore alleged, fraudulently failed and neglected to and did not excavate the trench for the laterals from the main sewer to the curb line of the streets, or lay the sewer pipe in such trench from the main sewers to the curb line. On the contrary, in many instances, the number being to plaintiff unknown, because of the fact that the same are many feet below the surface of the earth and would require the excavation of all laterals to ascertain the exact number, only dug such trenches a short distance from the main sewer and laid the pipe only a short

distance from the main sewer, but falsely represented to plaintiff that the trench was excavated underneath the surface to the curb line and the sewer pipe laid accordingly as provided in the contract to such curb line, which false statements and representations plaintiff believed and relied upon, and was deceived thereby; but alleges, as a matter of fact, such trenches were not dug to the curb line and the laterals not laid, the exact number of which and the length of which plaintiff is unable to allege, accordingly as hereinbefore set forth.

"Plaintiff further avers that because the defendant Randles failed and neglected to complete the contract, and did not lay the sewer pipe accordingly as provided in the contract, and because of the openings left in the joints, and the inferior mortar used in laying the pipe, and the failure to employ the proper oakum gaskets as required, the sewers have become filled with sand and debris, and the foundation thereby destroyed, and the pipes broken; that the system is worthless and that plaintiff is damaged in the sum of $12,885.00, by reason of the wrongful and fraudulent acts of defendant Randles, as alleged in the complaint.

"That the sewer system in question was laid in fine sand, the territory covered by the system having been many years prior thereto covered by the waters of the ocean, but became filled at a considerable depth below the bottom of the sewer trench with fine sand, the water of the ocean having receded therefrom."

Defendant Randles filed a separate answer in which he denied the breach of contract and denied the fraud and set up affirmatively three separate defenses: First. That the work of constructing the sewer was performed by him under the direction and superintendence of the city engineer and inspector of the plaintiff and was done in their presence and that the same and all materials entering into the same were examined, approved and accepted at the time of doing the work and the using of the materials; that the en-

gineer and inspector well knew at all times how the work was being done. And that on September 22, 1914, plaintiff accepted the work and paid for the same in full. Second. That the city engineer was the arbiter agreed upon by the parties to decide whether the work had been done according to the contract, and that he had decided that it was so done and performed. And, Third. That the faults in the sewer referred to in the complaint were the results of improper and faulty plans and specifications and not the fault of the manner in which the work was done.

The defendant surety also filed a separate answer in which the breach of contract and the fraud alleged in the complaint were denied and three separate defenses were set up, the first and second thereof being the same as the first and second separate defenses set out in Randles' answer. The third separate defense being that, under the contract, the plaintiff had agreed to inspect the work and determine for itself as it progressed whether it was being properly and satisfactorily performed; and that 20 per cent of the contract price was to be retained by plaintiff until the completion of the work; that the surety had the right to rely upon plaintiff performing the agreements, which were for the benefit of the surety; that on September 22, 1914, there was in plaintiff's hands, of the contract price for the work still unpaid to Randles, the sum of $6,343.58, and that plaintiff without notice to or knowledge or consent of the surety paid the sum to Randles; and that under the contract, upon which the surety had the right to rely, plaintiff was not authorized to rely or depend upon any statements made to it, but must ascertain the facts as to the doing of the work as provided in the contract and specifications; that by reason of paying Randles in full without notice to or consent

of the surety, the surety was thereby released and discharged of all obligations.

Plaintiff filed replies putting in issue the material allegations of the separate defenses contained in the answers.                               AFFIRMED.

For appellants there was a brief with oral arguments by *Messrs. Malarkey, Seabrook & Dibble* and *Mr. James L. Hope.*

For respondent there was a brief with oral arguments by *Mr. Victor Miller, Messrs. G. C. & A. C. Fulton* and *Mr. Edw. C. Judd.*

BEAN, J.—Defendants' first contention is that the complaint fails to state facts sufficient to constitute a cause of action against either of the defendants. Under this division of argument, defendants also submit two assignments of error: Number XLIV. That the court erred in giving to the jury, over the objection and exception of defendants, instruction, to wit:

"If you find for the plaintiff in the particulars complained of, as I have heretofore instructed you, then it will be your duty to determine the fair and reasonable amount it will cost the plaintiff to repair the sewer in the particulars wherein defendant Randles failed, to the end that plaintiff will have a sewer of the character contracted for, and bring in your verdict accordingly."

And also assignment Number XLV. That the court erred in giving the instruction to the effect that:

"If you should find that the defendant Randles failed to lay this sewer in the particulars complained of and that the plaintiff accepted the same without knowledge of such facts, in order to determine the amount, if any, the plaintiff is entitled to recover in this case, you have the right to take into consideration

the cost to plaintiff of the necessary excavations and work and labor and materials necessary to be employed in making such repairs, as in your judgment from the evidence in this case, shall be required in order to make the sewer correspond with the contract.''

It is the main contention of counsel for defendants that the plaintiff cannot recover for the reasons:

First. Under the circumstances presented by the complaint the acceptance of and the payment for the work as completed in accordance with the contract precludes the recovery of damages for patent defects, unless such acceptance and payment were obtained by defendants' fraud.

Second. The allegations of the complaint failed to state any facts constituting fraud in the procuring or inducing of the acceptance of payment of the work.

Third. The complaint fails to allege that the city removed the alleged defective work and properly reconstructed the same, stating the expense thereof.

Fourth. That it appears on the face of the complaint that the surety has been released and discharged from all liability.

1. It is convenient first to state the rule of law by which the facts of the case are to be measured. An acceptance of work done under a construction contract does not constitute a waiver of latent defects of which the owner was ignorant at the time, or which may appear thereafter: 9 C. J., p. 798; *Fike* v. *Stratton*, 174 Ala. 541 (56 South. 929); *Steltz* v. *The Armory Co.*, 15 Idaho, 551 (99 Pac. 98, 20 L. R. A. (N. S.) 872); *Monahan* v. *Fitzgerald*, 164 Ill. 525 (45 N. E. 1013); *Korf* v. *Lull*, 70 Ill. 420; *Holslag* v. *Morse*, 188 Ill. App. 607; *Toronto Radiator Mfg. Co.* v. *Alexander*, 2 Ter. L. R. 120; *Eaton* v. *Gladwell*, 108 Mich. 678 (66 N. W. 598);

*Dutton* v. *Million,* 114 Ark. 330 (169 S. W. 1183); *Utah Lumber Co.* v. *James,* 25 Utah, 434 (71 Pac. 986).

In order for an acceptance to be a waiver it must be under such circumstances as to show that the party accepting knew or ought to have known that the contract was not fully performed. 6 R. C. L., p. 991, Section 359, where the rule is stated thus:

"Where work is accepted with knowledge that it has not been done according to the contract, or under such circumstances that knowledge of its imperfect performance may be imputed, the acceptance will generally be deemed a waiver of the defective performance. But this rule does not apply to latent defects. The acceptance of work which has been defectively done, the defects being unknown and not discoverable by inspection, does not amount to a waiver of the imperfect performance": *Flannery* v. *Rohrmayer,* 46 Conn. 558 (33 Am. Rep. 36); *Van Buskirk* v. *Murden,* 22 Ill. 446 (74 Am. Dec. 163); *Brent* v. *Head, Westervelt & Co.,* 138 Iowa, 146 (115 N. W. 1106, 16 L. R. A. (N. S.) 801); *Ludlow Lumber Co.* v. *Kuhling,* 119 Ky. 251 (83 S. W. 634, 115 Am. St. Rep. 254, and note); *Thompson Mfg. Co.* v. *Gunderson,* 106 Wis. 449 (82 N. W. 299, 49 L. R. A. 859); *Iaege* v. *Bossieux,* 15 Gratt. (Va.) 83 (76 Am. Dec. 189).

The evidence introduced upon the trial tended to support the allegation of plaintiff's complaint and to show that soon after the sewer was accepted and Randles had received his pay therefor, the sand at many points caved in from the top of the excavation and a large quantity of sand was discovered at the outlets; that an island of sand was thereby formed in the Necanicum River near where the outlets were. This would cause the ground on top of the sewer to cave in and large holes in several places occurred in the street where the sewer was laid. In many instances, where

these cave-ins occurred, the city dug down to the sewer and discovered that while there, was cement in the joints on the top of the sewer-pipe, there was no cement on the part underneath for about one-fourth the diameter of the pipe; that the part of the pipe underneath was entirely open and no cement mortar had ever been placed therein. The main sewer was laid along Seventh Street, the principal street in the City of Seaside. These cave-ins became so numerous on this street that about 250 yards of the main sewer was excavated and it was discovered that in almost every joint no cement mortar had been placed on the underneath side of the bell, while on the top for about three fourths of the diameter of the pipe, which would be visible to one standing on the bank of the trench at the time the pipe was laid, the cement mortar seemed to have been well filled in. Although the mortar in practically all instances was not two parts sand to one part cement, but was filled with earth and dirt, making the joint practically worthless. The sand was so fine that it ran into the sewer-pipe and was carried down into the Necanicum River and entirely stopped up the outlet of the pipe.

That there were about 3,000 feet of the main sewer laid below an elevation of seven feet, which, according to the contract, was required to be laid with a gasket of oakum dipped in hot asphaltum of the proper consistency, and the oakum gasket when thoroughly compacted with a calking iron to fill the bell to one half of its length, after which the joints should be cemented in the manner provided for in the specifications. As a matter of fact, there was no oakum gasket placed in any of the sewer joints at all. The sewer-pipe laid below the elevation of seven feet was laid in the same manner as hereinbefore indicated with an inferior

mortar, and the part underneath left entirely open; that although the contract required all openings in laterals to be closed with vitrified or cement cover, puttied in with cement mortar on the outside only, this was not done. That the openings in all the laterals were not closed at all, while a part of them had shingles placed on top of the openings, leaving space for sand to go through, whereby the sand filled the laterals and they became useless.

The evidence also tended to show that there were a number of instances where the sewer-pipe was laid in water. The specifications required that where water is encountered, it must be drained away before any pipe or concrete is placed in the trench; that Randles, without regard to this provision, laid the pipes and filled in the cement joints as before indicated, in many instances in running water; that the result was that whatever mortar was placed in the joints was washed out. The proof indicated that Randles designedly and deliberately failed to perform his contract in the manner specified, and perpetrated a fraud upon the city. That the city officials had no notice or knowledge of these things, or the fact that the sewer was not constructed according to the contract at the time of the acceptance; that the contractor deceived the engineer in charge and the inspector; that the pipe being laid in a deep, narrow trench, the defects or failures to cement the joints of the pipe underneath could not be discovered by an ordinary inspection, and the defects should be termed latent; that the city officials believed that the sewer system was constructed in accordance with the contract and did not discover otherwise until about the tenth day of January, 1916. It thereupon notified Randles and the surety company to make the contract good. Randles came several times and made

various excavations and temporary repairs to the joints and then refused to do anything at all. The surety company denied liability and refused to do anything in regard to the matter.

According to the contract and specifications, neither the engineer nor the inspector was the final arbiter between the parties, it being specially provided in Specification Number 8:

"No inspector shall have the power to waive the obligation of the contractor to furnish good materials or perform sound and reliable work as herein specified; and any failure or omission of the Inspector or Engineer to condemn any defective material or work shall not release the contractor of the obligation to at once tear out, remove and properly reconstruct the same at his own cost at any time upon the discovery of the defect, and upon receipt of the notice of the Engineer to do so."

2. The contract for the improvement does not authorize either the engineer or the inspector to accept or approve the work when not done according to the contract. It is expressly stipulated that they have no such power. The municipality alone reserves the power to accept and approve the work. Therefore, the acceptance by the city and payment of the contract price, where the work is not done in accordance with the contract, made without knowledge of the defects complained of, such defects not being discoverable by an ordinary inspection, will not be construed as a waiver or an estoppel to claim damages for such defects upon discovery thereof: *Rogue River Assn.* v. *Gillen-Chambers Co.,* 85 Or. 113–115 (151 Pac. 728, 165 Pac. 679); *United States* v. *Walsh,* 52 C. C. A. 419 (115 Fed. 697); *Ritchie* v. *City of Topeka,* 91 Kan. 615 (138 Pac. 618); *Mercantile Trust Co.* v. *Hensey,* 205 U. S.

298 (27 Sup. Ct. Rep. 535, 10 Ann. Cas. 572, 51 L. Ed. 811).

The evidence produced on behalf of plaintiff tended to prove defendant Randles guilty of the fraud, alleged in the complaint, all without knowledge of plaintiff, and that on account of the fraud practiced the sewer was worthless; that plaintiff was thereby induced to and did accept the sewer system under the belief that it was completed according to the terms of the contract; that Randles not only represented that the work was completed according to the plans and specifications, but after his attention was directed to the condition of the sewer, when he excavated some of the pipe, all that he could on account of the mud around it and reached around under the pipe, he claimed that "there was no trouble with the joints."

3. A contract which provides for work of construction to be performed in the best manner and the materials of the best quality, subject to acceptance or rejection of an architect or engineer, all to be done in strict accordance with the plans and specifications, does not make the acceptance by the architect or engineer final and conclusive, and will not bind the owner or relieve the contractor from the agreement to perform according to plans and specifications: *Mercantile Trust Co.* v. *Hensey,* 205 U. S. 298 (27 Sup. Ct. Rep. 535, 10 Ann. Cas. 572, 51 L. Ed. 811); *General Fireproofing Co.* v. *Wallace & Son,* 175 Fed. 650 (99 C. C. A. 204); *Hartupee* v. *City of Pittsburg,* 97 Pa. 107.

4. The acceptance by municipal officers of work done on a contract for a municipal improvement is only *prima facie* evidence that the work has been done in substantial compliance with the terms of the contract: *Sweeney* v. *Jackson Co.,* 93 Or. 96, (178 Pac. 365); *Gulick* v. *Connely,* 42 Ind. 134; *Barker* v. *Nichols,* 3

Colo. App. 25 (31 Pac. 1024); *Korf* v. *Lull,* 70 Ill. 420;
*Kilbourne, Jenkins & Co.* v. *Jenning & Co.,* 40 Iowa,
473.

5, 6. A principal is never charged with the conse-
quences of the misconduct of his agent in violating his
instructions, except for the protection of some third
person who has been misled by a reliance of an osten-
sible authority of the agent: *United States* v. *Walsh,*
52 C. C. A. 419 (115 Fed. 697). Randles had no right
to suppose that the engineer for the city or the inspec-
tor was authorized to permit any deviation from the
contract. The testimony tended to indicate that the
municipality did not know that any such deviation had
taken place, and under the circumstances of this case
such knowledge could not be imputed to it. Therefore,
the acceptance of the work and the making of the final
payment did not prejudice the right of the municipality
upon discovering the truth to maintain its action for
the breach of the contract as exemplified by the au-
thorities above cited.

7. The contract provided that Randles should fur-
nish all the material, implements and perform the
labor necessary to construct the sewer system in con-
formity with the terms, conditions and requirements
of the plans and specifications therefor. The bond
obligatory executed by him and the surety company
was conditioned that he should "truly keep, perform
and fulfill all and every of the covenants, conditions,
stipulations and agreements in said contract men-
tioned to be performed and fulfilled." The plans and
specifications were made a part of the contract. While
provision was made that, "Upon the neglect or refusal
of the contractor to reconstruct work rejected by the En-
gineer within 24 hours after receipt of notice, the same
may be removed and reconstructed under the direction
of the Engineer at the expense of the contractor,"—

thus giving the city the right to so reconstruct the work—yet it was not compelled to do so, and the fact that the municipality did not see fit to reconstruct the sewer contracted for by Randles in precisely the same manner and according to the same plans and specifications would not affect the right of the municipality to recover damages for the breach of the contract on the part of Randles. This is plainly held in *United States* v. *United States Fidelity & G. Co.*, 236 U. S. 512 (35 Sup. Ct. Rep. 298, 59 L. Ed. 696). The contention made by defendants that the city must first reconstruct the sewer system cannot therefore be maintained.

8. It is further maintained on behalf of defendant that the surety was released. The payment by the city for the work accepted by it under an honest belief that it was done in the manner required by the contract did not release the surety: *Mayor etc. of City of Newark* v. *New Jersey Asphalt Co.*, 68 N. J. Law, 458 (53 Atl. 294–296). By the express stipulations of its bond the surety company under the circumstances of this case is liable for the breach of the contract by Randles.

9. The measure of damages in this case is the reasonable cost and expense of procuring the work and labor to be done and furnishing the necessary material in order to make the sewer system to conform to the provisions of the contract: 3 Sutherland on Damages (3 ed.), § 699; *Williams* v. *Island City Milling Co.*, 25 Or. 573 (37 Pac. 49); *United States* v. *Walsh*, 52 C. C. A. 419 (115 Fed. 697). There was no error in denying the motion for a nonsuit which was interposed at the appropriate time by counsel for defendants.

10. The trial court instructed the jury in conformity with the law here laid down, and we find no error in that respect. The plaintiff had the right to prove

such damages without waiting for the sewer system to be reconstructed. In *United States* v. *United States Fidelity & G. Co.,* 236 U. S. 512 (35 Sup. Ct. Rep. 298, 59 L. Ed. 696), the court held that where a contractor had agreed with the United States to erect a certain structure and had failed to do so, the United States had a cause of action against it immediately upon his failure to finish the work and it was not necessary for the government to complete the work, but might abandon it and prepare entirely new plans and specifications. Counsel for defendants in conformity with their contention requested the court to instruct the jury in substance that the city could not avoid knowledge of how the work was done by proving that its agents failed to perform their duty of inspection, and that defendants were not responsible for such inspection, and predicates error upon the refusal of the court to so instruct the jury, the request was properly refused. It appears that the trench for the sewer-pipe was not entirely excavated; about eight feet being excavated and then two to four feet tunneled, so that it was practically impossible for the inspector to see whether all of the pipe joints were properly cemented. He could not, of course, see the under side from the bank of the trench and he trusted Randles to a certain extent. Randles should not be permitted to take advantage of his own wrong and say that the engineer and inspector for the city were negligent in permitting him to deceive them.

11. An owner is not bound as against his contractor by the acts of a supervising engineer or inspector in approving work done by the contractor where such approval is the result of either bad faith, collusion or gross negligence: *Reid* v. *Alaska Packing Co.,* 47 Or. 215, 221 (83 Pac. 139); 2 C. J., p. 834; *Chandler* v.

*Wheeler* (Tenn. Ch. App.), 49 S. W. 278; *Rogue River Assn.* v. *Gillen-Chambers Co.,* 85 Or. 113 (151 Pac. 728, 165 Pac. 679, 1183).

12. Contention is made on behalf of defendants that under the provisions of the contract:

"No part of this sewer shall be constructed in the absence of an inspector, and any work so performed shall be deemed in, violation of these specifications, and the engineer may order the same to be removed by the contractor and reconstructed at once."

That the larger part of the sewer was laid in the absence of the inspector; that the inspector and engineer had knowledge of this fact. Therefore, it is contended that this was negligence on the part of the plaintiff which released the surety. This stipulation should be considered with the other provisions of the contract contained in Specification Number 8 to the effect that no inspector shall have power to waive the obligation of the contractor to furnish good material or perform sound and reliable work as therein specified; that any failure of the inspector or engineer to condemn any defective material or work shall not release the contractor of the obligation to properly reconstruct the same at any time upon discovery of the defect, and upon notice to do so. The fact that work was done in the absence of the inspector or engineer which was not in accordance with the contract, although not objected to either by the inspector or engineer at the time, even if either or both knew the work was being imperfectly done would not be a waiver on the part of plaintiff according to the express terms of the contract.

13. The plaintiff alleged that Randles failed to perform the work according to the terms of the contract. The defendants denied this and pleaded that:

"Said defendant Randles performed said work only in the presence of and under the superintendence and directions of said City Engineer and Inspector and every piece of material and every bit of work furnished, laid and done by said defendant in the prosecution of said work was examined, inspected and approved by said City Engineer and Inspector, and said Engineer and Inspector examined and inspected all of said work and materials while said work was being done and knew how the same was being done and the quality thereof, and they approved and accepted the same."

And that defendant Randles performed and completed said work in conformity and accordance with the said contract, plans and specifications. The issue, therefore, was squarely raised as to whether or not the work was done in accordance with the stipulation therefor. We fail to see that negligence on the part of the city engineer or inspector could become material. The surety company in effect claims that by reason of the fact that Randles did not construct the sewer in conformity with the requirements of the contract but deceived the engineer and inspector for the city, and made them believe that he did properly construct the system, and defrauded the city, the surety is released. Such claim is not in accordance with the spirit or letter of the bond.

14, 15. The defendants contend that whatever bad or defective conditions appeared in the sewers were the result of defective plans and specifications and not of any faulty material or workmanship. It was incumbent upon the city to prove that Randles failed to perform the requirements of the contract specifically as mentioned in the complaint. It was no defense to this action for Randles to say that had he completed

92 Or.—43

the sewer system in accordance with the terms of the contract, that the sewer would have been worthless or that the plan was a bad plan. The only issue presented by the pleadings was whether or not Randles did those things that plaintiff claimed that he did not do. Defendants at the trial offered to prove by the testimony of expert witnesses that the condition of the sewer, as testified to by plaintiff's witnesses, was in their opinion the result of defective and improper plans and specifications. The trial court sustained an objection on the ground that the result was for the jury to determine. The circumstances were all detailed to the jury. Over the objection and exception of counsel for the defendants, the court charged the jury to the purport that it would not make any difference whether the plan adopted for this sewer was a good plan, or that a better plan could have been adopted; that this was no defense for Randles' failure to lay the sewer according to the contract and specifications; that the plaintiff was entitled to have the contract performed as agreed upon. If the contractor performed the work in accordance with the terms of the contract, he is entitled to pay without regard to the results. The court explained to the jury:

"That if you find from the evidence that defendant Randles constructed said sewer in accordance with the plans and specifications and that after the sewer was so constructed, it broke down and the joints went to pieces or were broken as alleged in the complaint and the caps or stoppers of the Y's and laterals were driven out so as to leave the pipes open, but you further find that such breaking or opening of the joints complained of in the complaint were on account of the faulty or defective or unsuitable character of the plans and specifications themselves and was not due to the faulty or defective material or work of the said de-

fendant Randles, then the defendants would not be liable for such damage and your verdict in that case would be for the defendants. * * "

Under the testimony in this case, we think the ruling was correct and that the instructions properly submitted the question to the jury.

Error is predicated upon the refusal of the court to permit John Matson, Randles' foreman, to testify that the engineer in charge of the work instructed him to leave out the oakum gaskets at the places required by the specifications. The defendants, by their answer, expressly alleged that Randles had performed the contract fully in accordance with the terms and conditions thereof. The court plainly told the jury that:

"If you find from the evidence that defendant Randles laid the pipe in accordance with the contract and specification in the instances I have indicated, then this will end the case and your verdict must be for the defendant."

The court further charged that:

"If the plaintiff, through its council, at the time it accepted and paid for the sewer, knew that Randles had not performed his contract in these particulars and had not filled these joints accordingly as provided by the specifications, as I have heretofore suggested, and with such knowledge, approved and accepted the work, then plaintiff cannot recover."

16, 17. Moreover, an examination of the record disclosing the terms of the contract reveals that the engineer had no authority to so release Randles from a necessary and important requirement of his contract, and the evidence offered was properly rejected. Therefore, the court rightly refused to allow the defendants to amend their answer so as to set up the fact that the engineer had directed the oakum gaskets

to be left out; the specifications expressly provide that the engineer had no such power. The authorities above cited sustain this holding.

18. During the trial of the case, the defendants offered evidence of experts in regard to the lasting quality of cement mortar made of two parts sand to one part of cement; that such mortar would disintegrate in a very short time; that it was porous; that water would percolate through the pores, and sand would also work its way through. In order to rebut such testimony, the plaintiff excavated two joints of sewer-pipe which had been laid for six years in the sand, at Seaside, within six feet of the sewer laid by Randles. The evidence tended to show that the mortar used in the joints of this sample sewer-pipe was two parts sand to one part of cement; that the pipe was laid in the same character of soil as the pipe in question. The cement joints were produced, offered and received in evidence. Opportunity was given defendants to examine the place from whence the sewer-pipe came. The purpose of the evidence was to rebut the statement that the cement mortar of a consistency of two parts sand and one part of cement in sewer joints was subject to disintegration in a short time. We think that the testimony was competent in order to rebut the theory of the experts to the contrary. The sewer-pipes and joints do not appear to have been offered or received in evidence as tending to prove that the sewer in question ought not to have failed.

19, 20. Error is predicated upon the instruction of the court to the effect that according to the terms of the specifications it was the duty of the defendant Randles to make a "tight joint" in each of the sewer joints with cement mortar of the required mixture, however difficult it would be to do this. This descrip-

tion of "tight joints" was plainly qualified by the instruction complained of that defendant Randles' contract to make these joints tight and to fill every part of the joint with mortar where required, or oakum where required "as required by the specifications." The specifications were before the jury and it being the duty of the court to construe the written contract, we see no error in so describing the calking of the joints instead of again specifying the particular manner in which the joints should be filled, especially when the term is qualified by reference to the requirement of the specification. A careful examination of the instructions of the court given to the jury, taking them as a whole, leads us to believe that the questions at issue were fairly submitted to and understood by that tribunal.

Assignment of error is predicated upon the overruling of the objection of defendants to the following question propounded to Mr. Bell, city engineer, to wit:

"Q. Now, what are the facts as to whether or not you relied upon the statement made to you by Mr. Randles in your acceptance of this sewer? * *

"A. I did."

21. The testimony concerning this question shows that Mr. Bell stated what Randles had stated to him. It also claimed as error that it was incompetent for this witness to testify that he would not have done as he did had he known the true facts. Testimony of the party as to what he believed, intended and relied upon was admissible: *Jarrell* v. *Young, Smyth, Field Co.,* 105 Md. 280 (66 Atl. 50).

In *Larson et al.* v. *Thoma,* 143 Iowa, 338, 345 (121 N. W. 1059, 1062), the court there says:

"The witness was further asked whether or not he would have bought that farm if he had not talked with

plaintiffs about it at all, and an objection to this question was sustained. We think the court might well have allowed the question to be answered. * * "

The question became important as to whether or not the municipality knew of the defect and what it would have done had it known of the same. This evidence was material: *United States* v. *Walsh,* 52 C. C. A. 419 (115 Fed. 697).

After a careful perusal of the able and exhaustive briefs and arguments of the respective counsel, and an examination of the record, we find no error. The judgment of the lower court is therefore affirmed.

AFFIRMED. REHEARING DENIED.

MR. JUSTICE BENNETT took no part in the consideration of this case.

