JAMES H. LANGLEY AND WIFE, NELLIE LANGLEY v. WADE H.
HELMS, T/A HELMS CONSTRUCTION COMPANY

No. 7126SC697

(Filed 17 November 1971)

1. Contracts § 26— defects in home construction — testimony by contractor

   In this action for breach of a home construction contract, the trial
   court did not err in the admission of testimony by plaintiffs' wit-
   nesses, a general contractor, as to defects observed by him in plaintiffs'
   home and what, in his opinion, caused them and whether the work in
   a particular instance was done in a good and workmanlike manner.

2. Contracts § 27— breach of construction contract — faulty workmanship

   Plaintiffs' evidence was sufficient to be submitted to the jury on
   the issue of defendant's breach of a home construction contract by
   failing to do some of the construction work in a good and workmanlike
   manner.

3. Contracts § 23— construction contract — waiver of breach — latent de-
   fects

   An acceptance of work done under a construction contract does
   not constitute a waiver of latent defects of which the owner is ignorant
   at the time of acceptance or which may appear thereafter.

4. Contracts § 25— breach of contract — issues

   In this action for breach of a home construction contract, the
   trial court did not err in refusing to submit an issue tendered by
   defendant which was not determinative of the rights of the parties.

5. Contracts § 21— construction contract — workmanlike manner

   An agreement to construct a building in a workmanlike manner
   extends to the materials used in the construction, not just to the work
   and labor in placing such materials.

APPEAL from *Thornburg, Special Judge,* 17 May 1971,
Schedule D Session, MECKLENBURG Superior Court.

Plaintiffs seek to recover damages allegedly resulting from defendant's breach of contract. The complaint alleges, in substance except where quoted, that plaintiffs and defendant entered into a contract for the purchase of a house which defendant, a contractor, was then building. The contract provided "that the house has been and will be constructed in a good and workmanlike manner and in accordance with the plans and specifications under which construction was commenced . . ." Plaintiffs paid the contract price. "(I)n the construction of the home for the plaintiffs, the defendant wrongfully failed to follow the plans and specifications and did some of the construction work in a defective and unworkmanlike manner, which contract deficiencies are as follows:" There follow 19 separately alleged deficiencies.

By answer, defendant denied the material allegations of the complaint, averred that he fully complied with the terms of the contract and that plaintiffs were fully aware of construction progress and accepted the house upon completion having had sufficient opportunity for inspection. Defendant counterclaimed for $500 for extra materials and labor furnished not contemplated by the contract and for which plaintiffs had refused to pay. No evidence was offered on the counterclaim, and no issue thereon tendered by defendant.

The jury answered the issues submitted in favor of plaintiffs, and defendant appealed.

*Farris and Mallard, by E. Lynwood Mallard, for plaintiff appellees.*

*O. W. Clayton and H. Parks Helms for defendant appellant.*

MORRIS, Judge.

Plaintiff testified in substance, except where quoted, as follows: When he entered into the contract with defendant, the house was almost completed. After defendant quoted a price to them, they told him if he would build a driveway, panel the den, wallpaper the bathroom, put in a paved driveway turn around, and make a few other alterations which plaintiffs wanted, they would buy the house. Defendant subsequently had an agreement prepared stating the price as $26,500 and listing the changes to be made. This agreement was executed by the parties. It provided, among other things: "Builder agrees that the house has

Langley v. Helms

been and will be constructed in a good and workmanlike manner and in accordance with the plans and specifications under which construction was commenced with the above modifications." Defendant, at the time the transaction was closed, agreed that he would grade the driveway so cars would not "drag" when they went in the drive. That was the only defect he mentioned at the closing and at that time the driveway was covered with dirt and straw. After plaintiffs moved in, they discovered that the driveway had big holes in it caused by its sinking after it was poured. After they had been in about a week washing machine water started coming up in the yard and about a week later small puddles of "stinking, stagnant" water appeared in the back yard. Defendant came and looked and had a man come to fix it. The man sent by defendant poured red dirt on top of the location of the septic tank and on the about 10-foot area of ponding which was about 30 feet from the septic tank. When the first rains came thereafter the same trouble reappeared. Defendant first said he would fix it and later refused to, so plaintiff had the necessary work done in accordance with directions of the Health Department. In the early spring they noticed that the furnace's coming on caused a couch in the den to "vibrate." Upon inspection, it appeared that the den floor had sunk about two inches at one end. Defendant said he would have to put steel posts or jack posts in to take the pressure off the furnace pipes and try to get the floor back up, but nothing has been done. At the other end of the den the wall between the kitchen and the den was bowing out into the kitchen and several of the inside doors in the bathroom and bedrooms were sticking. In the den where the sheetrock came together in the ceiling it was sinking. Sometime after moving in, when the family was cooking popcorn, an attempt was made to use the vent over the stove in the kitchen but it did not work. Upon inspection in the attic and by running a ruler up the vent, it was discovered that it wasn't vented at all. Shortly after they moved in some water was spilled on the kitchen cabinet and soaked into the wood. Defendant came over and said no sealer had been put on. Defendant had that done but did not afterwards refinish them and they are rough. The floor covering in the kitchen appeared to be all right when they moved in but later, upon closer inspection from a seated position, it appeared that the covering lacked half or three-quarters of an inch going to the molding, doors and heat registers. About a month after he moved in nail pops began to appear

on the walls and ceilings. On two different occasions, defendant sent someone to repair these, and they beat them down with a hammer and put a coat of some kind of sealer at the place where the nail pops were. There are four to eight on each two-by-four. By January of 1969 there was a two-by-four coming through the outside wall into the living room, it having broken through the wall and was sticking through about an inch. In the master bedroom, the ceiling has sagged or bowed, and this condition became noticeable about four months after they moved in. The ceilings on the front and back porch are in the same condition. The broken tile on the back porch is loose. The molding around the ceiling on the porches has "big globs" of paint all over it. Shortly after moving into the house, he noticed that rain water came down between the gutter and the house. All of these conditions developed within the first year after they moved in but have not gotten any worse. Defendant had told him that he made no money on the house and had done all he could do. Plaintiff had gotten Mr. Lamont Ervin to come and look at the defects and give him an estimate on what it would cost to repair these conditions.

[1] Assignments of error Nos. 1 through 12 and 14 through 24 are all addressed to the admission of certain testimony of Lamont Ervin who testified that he had been in the contracting business in Charlotte for some 21 years, had held a North Carolina State license since 1950, and was in the carpentry business before becoming a general contractor. He further testified that most of his contracting work was in Mecklenburg County. The witness testified that he had been to plaintiffs' house on two occasions at the request of plaintiffs "to look at his house and to check it out with him to see how the house was constructed." He stayed more than an hour each time. He was allowed to testify, over objection, as to defects observed by him and what, in his opinion caused them and whether, in his opinion, the work in a particular instance was done in a good and workmanlike manner. We think the evidence competent and admissible, and these assignments of error are overruled.

[2] By assignments of error Nos. 25, 26, and 27 defendant contends that the court erred in refusing to grant his motion for a directed verdict at the close of plaintiffs' evidence and renewed at the close of all the evidence, in refusing to grant defendant's motion for judgment n.o.v., and in refusing to grant

defendant's motion for a new trial. The grounds for defendant's motion were that plaintiffs had failed to show (1) a violation of the contract, (2) a failure of defendant to construct the house in accordance with the plans and specifications, and (3) that defendant failed to construct or complete the house in a workmanlike manner. While plaintiffs alleged breach of the contract in two respects; i.e., failure to follow the plans and specifications and also that defendant failed to do some of the construction work in a good and workmanlike manner, the only theory pursued at trial was the latter. This basis of the action at trial was the failure to construct, in some respects, in a good and workmanlike manner. In our opinion, the evidence is sufficient for submission of such an issue to the jury and would allow, but not compel, the jury to find that defendant did breach the contract. See *Cantrell v. Woodhill Enterprises, Inc.*, 273 N.C. 490, 160 S.E. 2d 476 (1968). These assignments of error are overruled.

[3]  Assignment of error No. 33 challenges the correctness of the court's ruling on defendant's motions to dismiss plaintiffs' action with respect to the condition of the vent over the stove, the condition of the kitchen cabinets and the condition of the floor covering in the kitchen. These motions the court denied but allowed motions with respect to the condition of the gutters and downspout at the rear of the house and the condition of the molding on the porches. Plaintiffs admit acceptance of the house but contend the defects about which they complain were latent and not discoverable by inspection. We agree that the defects as to gutters, downspouts, and molding on the porches were discoverable. "An acceptance of work done under a construction contract does not constitute a waiver of latent defects of which the owner was ignorant at the time, or which may appear thereafter." *Cantrell v. Woodhill Enterprises, Inc., supra,* at 496, quoting from *City of Seaside v. Randles* (Oregon), 180 P. 319. There was sufficient evidence upon which a jury could find that the three defects as to which motions were denied were latent defects not discoverable by reasonable inspection.

[4]  Defendant tendered an issue as follows: "Did Helms Construction Company fail to construct the house of the plaintiffs in a good and workmanlike manner and in accordance with the plans and specifications under which construction was commenced with the modifications as agreed upon?" The court re-

fused to submit this issue, and submitted three issues: (1) Whether there was a contract, (2) If so, did defendant breach the contract, and (3) Damages. Plaintiffs did not pursue the allegation of breach by failure to follow the plans and specifications. Defendant assigns as error the refusal of the court to submit the tendered issue. The issues as submitted were so framed as to present the material matters in dispute upon instructions by the court as to what would constitute a breach. The issue tendered was not determinative of the rights of the parties, because the plans and specifications were not in evidence, nor was any evidence presented by plaintiffs with respect thereto, that theory having been abandoned by plaintiffs. This assignment of error is without merit.

[5] Defendant submitted to the court a requested instruction which was refused by the court. This refusal defendant assigns as error No. 29. This instruction, in substance, was that the obligation of the builder to construct the house in a good and workmanlike manner does not extend to the materials used in the construction of the building but applies only to the work and labor in the application and placing of such materials; that the plans and specifications are not in evidence; therefore, there is no guide to be used in determining the grade or standard of the materials used or to be used; and therefore, the jury would consider only the evidence pertaining to the manner in which the work was performed and not consider any evidence concerning the materials used in the construction of the building. While we agree with defendant that the builder is not an absolute insurer, we do not agree that an agreement to construct in a good and workmanlike manner would completely exclude the undertaking to protect the purchaser or owner against the use of bad and unsuitable material in doing the work undertaken. This assignment of error is overruled as are Nos. 31 and 32 which are closely akin, and are addressed to the failure of the court to declare and explain the law with reference to the contract provision that the house would be constructed in accordance with the plans and specifications.

Our examination of defendant's 33 assignments of error reveals no prejudicial error and, therefore, no reason for disturbing the verdict and judgment of the trial tribunal.

No error.

Judges PARKER and VAUGHN concur.